## KANSAS CITY EXPOSITION DRIVING PARK v. KANSAS CITY, Appellant; IBID v. IBID.

### Division Two, May 19, 1903.

1. **Appellate Jurisdiction:** SUIT TO ENJOIN TAXES. The Supreme Court has jurisdiction of the appeal from a judgment in a suit against a city to enjoin the collection of certain state, county and municipal taxes, which under the revenue laws are alleged to have been illegally levied.

2. **Taxation:** EXEMPTION: BURDEN. The burden is on the party claiming the exemption to point to the law exempting him from taxation, and such law must be clear and unambiguous. Such statutes and constitutional provisions are construed with strictness and most strongly against those claiming the exemption.

3. ———: ———: AGRICULTURAL SOCIETIES. A private corporation organized "to establish and maintain a race course and driving park; to advance the mechanical, industrial and fine arts; to promote athletic and all other lawful sports and amusements, and erect and maintain the necessary buildings and appurtenances," and whose sole or principal business is horse-racing, is not a horticultural or agricultural society within the meaning of the Constitution, and its property is not exempt from taxation.

4. ———: ———: ———: KIND OF SOCIETIES MEANT. The clause of the Constitution providing that "such property, real and personal, as may be used exclusively for agricultural or horticultural societies heretofore organized or which may hereafter be organized in this State, shall be exempt from taxation," refers to such agricul-

tural and horticultural societies as existed at the time the Constitution was adopted, and which are still contemplated by the general laws of the State, and were societies entirely distinct from private corporations organized solely for private gain, and so treated in the law. Those societies were created for the sole purpose of encouraging agriculture and horticulture, and for years were favored objects of the State's bounty, and were denominated "societies," not "corporations."

5. ———: ———: ———: RES ADJUDICATA. Where the property of private corporation in prior suits in the circuit court was held exempt from taxation for previous years, as being an agricultural society within the meaning of the Constitution, in a subsequent suit by the same plaintiff against it for taxes for other years, there having been no change either in the law or the facts, the question of its exemption from taxation is *res adjudicata*, although that question was then incorrectly decided. But if in those suits taxes for purposes not sought to be charged were not involved, and the power of the city or State, to levy them was not in issue, the question as to them is not *res adjudicata*. In this case these purposes were taxes for benefits for park and street and sewer improvements.

6. ———: ———: GENERALLY AND SPECIALLY. Although property may be exempt from taxation generally, yet it is liable for benefit assessments for street paving, sewers, etc., even under a constitutional pro-provision exempting it from "taxation of every kind."

## Transferred from Kansas City Court of Appeals.

AFFIRMED IN PART AND REVERSED IN PART.

*R. J. Ingraham* and *L. A. Laughlin* for appellants.

The record shows that in the two cases at bar respondent obtained an injunction enjoining the city from the collection of park and park maintenance taxes as well as city taxes levied during the years 1896 and 1897. So much of the judgment of the court below as enjoins the collection of the park and park maintenance tax is clearly void, because those taxes are taxes for local improvements and do not come within the exemption from general taxation given by the Constitution. Thus, in Sheehan v. Good Samaritan Hospital, 50 Mo. 156, defendant claimed to be exempt from a special assessment

against it for the improvement of a street on its front under the statute which provided its property "should be exempt from taxation of every kind." Lockwood v. St. Louis, 24 Mo. 20; Clinton ex rel. v. Henry Co., 115 Mo. 557; State ex rel. v. City of Kansas, 89 Mo. 34. It has been expressly held by this court in Kansas City v. Bacon, 147 Mo. 301, that the park taxes levied under the Kansas City charter are local assessments, and that school and church property, though exempt from general taxation, are subject to such taxes.

*Gage, Ladd & Small* for respondents.

(1) All these questions are *res adjudicata,* and settled by the judgments in prior cases. Railroad v. Steele, 63 Fed. 867; Grunert v. Spalding, 104 Wis. 193, 78 N. W. 606. (2) The judgment cancelling the taxes for the years 1894 and 1895 is *res adjudicata* as to the taxes in controversy for the years 1896 and 1897, because the issues adjudicated in the prior case are identically the same as those presented in the cases now before the court. This proposition is conclusively settled by the opinion of the Supreme Court of the United States, in New Orleans v. Citizens' Bank, 167 U. S. 371.

GANTT, P. J.—For the purposes of this appeal these two causes will be considered together. They are suits to enjoin the collection of certain taxes alleged to have been illegally levied on certain city property and have been transferred to this court because they involve a construction of the revenue laws of the State.

We think they were properly certified, as the exemption claimed applies as to all State and county taxes as well as to the municipal tax.

One suit is to enjoin the taxes for 1896, and the other the taxes for 1897. A perpetual injunction was decreed, from which the city and the city treasurer appeal. The petition in substance alleges that the Kan-

sas City Exposition Driving Park, the plaintiff, is a corporation organized under the laws of this State in pursuance of article 8 of chapter 21 of the Revised Statutes of 1879, in force at the time of its organization; that the purposes of said association were and at all times have been to encourage and promote agriculture and improvement of stock, and for these purposes to establish fair grounds, and that plaintiff is an agricultural society; that on and before July, 1890, it leased for a period of ten years for use as a fair ground the following land, situate in Kansas City, to-wit, all the land lying between Kansas and Prospect avenues and Twelfth and Fifteenth streets, except a portion of said land used and occupied as a baseball park. The petition then describes both the baseball park and the fair grounds by metes and bounds and city lots.

Plaintiff states that at great expense by various improvements it established its fair grounds upon said leased property and has ever since 1890 held the sole and exclusive possession of said premises for the purpose of holding its fairs thereon and for itself as an agricultural society. That by its lease it is bound to save the several owners harmless against all taxes and assessments thereon, and to pay the owners large rentals. Plaintiff further states that Kansas City, defendant, is a municipal corporation and a city of said State of Missouri, and as such has power and authority to levy and collect taxes upon all property, real and personal, not by law exempt from taxation, and that defendant Green is treasurer of said city.

Plaintiff also states that by reason of the matters and things herein stated, said property herein above described (the property leased by said plaintiff) is by law exempt from taxation by defendant Kansas City, but that said city has, nevertheless, levied upon all said property divers large sums as city and park and boulevard maintenance taxes, and has charged the same against the several lots, tracts and parcels thereof on

its tax books for the fiscal year of 1897, and has delivered said tax books to defendant Green, as its treasurer for collection, and that said Green is now demanding payment of said taxes, and is now threatening and about to proceed to sell said property for said taxes, and unless enjoined and prevented by an order of this court, will sell the same and make certificates of such sales to the purchasers and issue tax deeds thereof, and that plaintiff's estate and title in said premises will be thereby clouded and plaintiff greatly and irremediably damaged and injured. Plaintiff further states that all the questions herein involved, including the right to exemption herein claimed, have been conclusively adjudged in favor of the plaintiff, in suits pending and heretofore determined between the parties in this court.

Wherefore plaintiff prays that said levies be declared and adjudged null and void, and that the same be decreed to be cancelled on said tax books, and that defendants be enjoined and restrained from further proceeding to sell said property, or any part thereof or in any manner to collect said city and park and boulevard maintenance taxes, and that a preliminary restraining order to the same effect and a temporary injunction pending this litigation be issued, and for such other and further relief as plaintiff in equity may be entitled to.

The answer, omitting caption, is as follows:

"Come now the defendants in the above-entitled cause and for their joint answer to plaintiff's petition therein filed admit that defendant Kansas City is a municipal corporation and a city of the State of Missouri, and as such has power and authority to levy and collect taxes upon all property, real and personal, not by law exempt from taxation, and that defendant Green is the city treasurer of said Kansas City, and the city has levied upon all of said property divers sums of money as city and park and boulevard maintenance taxes and charged the same against the several lots, tracts and parcels of land on its tax books for the fiscal year 1897,

and has delivered said tax books to defendant Green, as its treasurer, for collection, and that said Green is now demanding payment of said taxes, and is now threatening and is about to proceed to sell said property for said taxes and that he is about to sell the same and make a certificate of such sale to the purchaser and in due time issue tax deeds thereon. Defendants admit that all of the real estate described in plaintiff's petition is situate in Kansas City, Jackson county, State of Missouri. Defendants admit (1) that plaintiff has bound itself to save the several owners of the real estate described in the petition, and each of them, harmless against all taxes and assessments thereon; (2) defendants say that plaintiff has bound itself by the terms of its lease with the owners of said real estate to pay all of the taxes, the collection of which the plaintiff seeks to enjoin by this proceeding.

"Further answering the defendants deny all allegations of the petition, except those hereinbefore specifically admitted.

"Defendants for further answer say that the real estate described in the petition, has not been, for at least three years last past, used by the plaintiff for agricultural or horticultural purposes.

"Wherefore defendants ask judgment and that they be sent hence without day and for costs."

The petition was by leave of the court amended by interlining the words, "Plaintiff further states that all of the questions herein involved including the right to the exemptions herein claimed have been conclusively adjudged in favor of plaintiff in suits pending and heretofore determined between the parties in this court."

And thereupon defendant filed its answer to the amended petition as follows:

"Defendants for their joint answer to plaintiff's amended petition, deny each and every allegation therein contained, except that Kansas City is incorporated as a city, as set forth in the petition.

"Defendants further answering say that the taxes were levied and assessed against the property described in the petition by Kansas City, amounting to the sum of $970.07 for the year 1896, and $645.27 for the year 1897."

The decree of the court perpetually enjoined all levies of taxes made by the defendant city and all "city, park and boulevard maintenance taxes for the year 1897 against the property described." In the other suit the taxes and assessments for 1896 were enjoined.

Motions for new trials were duly made and overruled, and exceptions saved. The plaintiff offered and read, over the objections and exceptions of defendant, the articles of association of Kansas City Exposition Driving Park, the purposes of which are declared therein to be "to establish and maintain a race course and driving park; to advance the mechanical, industrial and fine arts; to promote athletic and all other lawful sports and amusements, and erect and maintain the necessary buildings and appurtenances," organized in May, 1889. For the years 1890, 1891, 1892, and 1893, fairs were held by this association on these grounds.

J. T. Holmes and Mrs. Stewart owned the property and leased it for ten years to the plaintiff, and plaintiff was to hold them harmless for all taxes. It appears that prior to these suits two other suits by injunction were brought against the city and its officers to restrain the collection of the taxes for 1891, and for the years 1894 and 1895, and judgment went against the city in both. The records in these cases were offered and admitted over the objections and exceptions of defendant that they were irrelevant and did not estop the city from enforcing taxes for any other subsequent year or years.

The evidence of the secretary was to the effect that for the years 1896 and 1897 they had held no fairs, indeed none since 1893.

In 1896 and 1897, they used the race track only for horse racing. The company let it to the parties who managed the races. The company did not run the races.

The lease ran for ten years from January 1, 1889, and bound the Exposition Driving Park Association to pay the State, county and general city taxes for the entire term of the lease, and the lessor was bound to pay the special assessments.

It was agreed that the taxes for 1896 were as follows:

| | |
|---|---|
| Land tax and interest .................... | $833.78 |
| Park maintenance tax and interest .......... | 128.28 |
| Advertising ........................ ...... | 8.00 |
| | ———— |
| | $970.06 |

For 1897:

| | |
|---|---|
| Land tax and interest .................... | $566.63 |
| Park maintenance and interest ............ | 72.04 |
| Advertising ............................ | 6.60 |
| | ———— |
| | $645.27 |

It was agreed, and the lease so shows, that blocks 4 and 6 and the north half of block 5 were not included in the lease, and what use the plaintiff made of these blocks was gratuitous. It paid no rent therefor and was not obligated to pay any.

The record presents two contentions. The plaintiff insists it is an agricultural and horticultural society, and the lands described in its petition are for that reason exempt.

The city insists:

First. That it is not an agricultural or horticultural society unless horseracing can be denominated agricultural and horticultural, and that the premises have been used since 1893 for no other purpose than horseracing.

Second.   The plaintiff maintains that because the city claimed the right to exact taxes for 1891, 1894 and 1895, and plaintiff enjoined the collection thereof and those injunction judgments became final, this whole matter is *res adjudicata,* and those judgments are conclusive against the city on its claim for taxes for these subsequent years.   The city controverts this proposition.

If plaintiff is correct on either proposition the judgment must be affirmed.   If the city is not estopped by the judgments of injunction against prior taxes, the question still remains, is the property exempt from taxation because used by a horticultural or agricultural society?

I.   The burden of establishing that the leasehold of plaintiff is exempt from taxation is upon plaintiff, and as the burden of taxation ordinarily should fall upon all persons alike, when one claims an exemption therefrom he must be able to point to the law granting such immunity and it must be clear and unambiguous. [Scotland Co. v. Railroad, 65 Mo. 134; State ex rel. v. Arnold, 136 Mo. 450.]

Such statutes and constitutional provisions are construed with strictness and most strongly against those claiming the exemption.   [2 Beach on Public Corp., par. 1443; Dillon on Munic. Corp. (3 Ed.), par. 776, and cases cited.]

The exemption of plaintiff's property must, if at all, be authorized by section 6 of article 10 of the Constitution of Missouri, which provides that "such property, real or personal, as may be used exclusively for *agricultural* or *horticultural societies*" may be exempted, and the statute, section 7505, Revised Statutes 1889, then in force, which provides that "the real estate and personal property which may be used exclusively for agricultural or horticultural societies heretofore organized, or which may be hereafter organized in this State, shall

Vol 174 mo—28.

be exempted from taxation for State, county, city, or other municipal purposes.''

Is the plaintiff an agricultural or horticultural society within the meaning of this constitutional provision, and was this land *used exclusively* for such a society? The contention of plaintiff is that a business corporation organized as it was under article 8 of chapter 21, Revised Statutes 1879, section 929, for the purpose, among others, of encouraging agricultural and horticultural pursuits ''and to establish and maintain a race course and promote athletic and other sports and amusements,'' is an *agricultural and horticultural society* within the meaning of the Constitution.

In the ascertainment of the meaning of any law, fundamental or statutory, it is legitimate and even necessary to trace the history of the terms used therein in order to gather their significance. Prior to the adoption of the Constitution of 1875 the Legislature was forbidden to pass any law exempting any property, real or personal, from taxation, except such as should ''be used exclusively for public schools, and such as belonged to the United States, to this State, to counties, or to municipal corporations within this State.'' [Constitution of 1865, art. 11, sec. 16.]

As early as 1853 the General Assembly of this State incorporated the Missouri State Agricultural Society. [Act February 24, 1853.] By an act of the Legislature, approved September 13, 1855, that law was repealed, and a new act adopted dividing the State into agricultural districts, and establishing a society for each, and designating the counties that should constitute such district agricultural society. Their powers were defined by the act.

Later in 1863 the Missouri State Board of Agriculture was created a body corporate and it was made the duty of all agricultural and horticultural societies to make reports to such State board.

The scheme of promoting county agricultural societies will be found in the General Statutes of 1865, pp. 321 to 324. These societies were intended to promote agriculture, manufactures and raising stock.

The county courts were authorized to vote money for premiums and they were adjuncts of the State Board of Agriculture and the presidents of said county societies were ex-officio members of the State Board of Agriculture, and they were required to make reports of their transactions to the State board.

These county agricultural and horticultural societies were thus provided for in the general statutes of this State when the constitutional convention of 1875 met and organized, and these statutes were continued in our general revision in 1889 (R. S. 1889, pp. 178 to183. inclusive) and were in full force and effect when the plaintiff corporation was organized.

Throughout the statutory history of these associations they are styled ''Agricultural'' or ''Agricultural and Horticultural *Societies.*'' Recurring now to the act of the Legislature of 1883 (Laws 1883, p. 140; R. S. 1889, sec. 7505) under which this exemption is claimed and without which there could be no exemption, because the proviso of the Constitution is that it could only be granted by a *general law,* we find that the exemption is granted to agricultural or horticultural societies heretofore organized or which may hereafter be organized in this State.

These agricultural societies, both State and county, had been favored objects of the State's bounty for many years. Every revision, commencing with 1855 down to the present, contains the law authorizing their formation and government. The purpose of their creation was not private gain but the encouragement of agriculture and horticulture.

Section 4060, Revised Statutes 1879, provides: ''The land and other property which may be held by any society under the provisions of this article shall be

held by the society for the *sole purpose, and none other whatsoever,* of erecting enclosures, buildings and other improvements calculated and designed for meetings of the society, and for exhibitions of various breeds of horses, cattle, mules, and other stock," etc.

Keeping in view that the State had made special provisions for the organization of these societies and had authorized the county courts to vote public moneys in aid thereof and that they constituted a prominent chapter in our general laws, it can well be understood why the convention considered them a proper subject of exemption from taxation. From the beginning they have been treated as entirely distinct from private corporations organized solely for private gain.

The language of the exemption, in view of these various statutes, is significant.

They are denominated "societies," not "corporations." While for certain purposes they are given corporate powers, they are never classed with other corporations. We are forced to the conclusion that the exemption of agricultural and horticultural societies had reference to these well-known societies and not to business corporations which might be formed for the improvement of stock, for private gain. Had it been the purpose to extend the exemption to corporations other than these, the language doubtless would have been much more comprehensive.

In our opinion the plaintiff is not such an agricultural or horticultural society as was contemplated by the convention which framed our Constitution and section 6 of article 10 thereof, and the nature of the exemption which plaintiff seeks is such as to forbid an implied exemption. It must be express.

II. Notwithstanding the conclusion we have reached, that the plaintiff has not brought itself within the rule of exemption, the proposition is advanced that this question is, as to Kansas City and plaintiff, *res adjudicata,* because the circuit court of Jackson county,

a court of general jurisdiction, had adjudged in two other cases that the plaintiff was exempt from taxation on this same leasehold for the years 1891, 1894 and 1895.

The taxes which plaintiff seeks to enjoin are those levied and assessed for the years 1896 and 1897, and which have accrued since the judgment in the two former cases. There is a sharp conflict between the highest courts of the country on this question.

In Railroad v. People, 46 Mich. 193, the plea of *res adjudicata* was interposed, that in a prior suit for taxes, on the same road for previous years, the judgment had been for the railroad. MARSTON, C. J., said: "Such proceedings are not *res adjudicata* against the State in this case. If in the present case the State sought to recover the taxes for 1858, 1859, 1860, and 1861, which were then in controversy and the collection of which was restrained by the decree rendered in that case, the company might well say the State was concluded, and the mere fact that the decision was acquiesced in by the State, from necessity, would be no answer. Such, however, is not the case. The decree in the Wayne circuit court would not prevent the State from claiming and seeking to recover taxes accruing for subsequent years. This is a new controversy, for a new cause of action, and in which some of the legal questions then passed upon are again raised, and the decision of the court thereon is of no importance except as a precedent." [Railroad v. Auditor Gen., 9 Mich. 448.]

In Bank v. Memphis, 101 Tenn. loc. cit. 167, the Supreme Court of Tennessee said: "Again, we think the plea of *res adjudicata* in tax cases is to be limited to the taxes actually in litigation and is not conclusive in respect of taxes assessed for other and subsequent years. Since this is not a Federal question, we decline to follow the ruling in New Orleans v. Citizens' Bank, 167 U. S. 371, in which it was held by a majority opinion that a judgment in a tax case is as conclusive of the taxes

of other years as it is of the taxes for the years actually involved.''

In Adams v. Railroad, 77 Miss. 266, Judge WHIT-FIELD says: ''The property adjudged by a court to a litigant is his thenceforward under the doctrine of *res adjudicata* as a rule of property as against the parties in that suit, but the reasons which the court may give for the decision are thereafter simply persuasive under the doctrine of *stare decisis,* and not in themselves to be invoked as the estoppel. It is a mere confusion of thought to blend these two wholly different principles underlying these legal doctrines, thus practically treating them as the same. Nor are the taxes for one year the *same cause* of action as the taxes of any other year in the proper technical signification to be given to the term *res adjudicata.* It is so held by the United States Supreme Court in Railroad v. Missouri, 152 U. S. 309, and in Phoenix Ins. Co. v. Tennessee, 161 U. S. 186. A decision for the taxes of any one year may be invoked under the doctrine of *stare decisis,* where the taxes of any other year are involved under the same claim. But certainly never, on any clear thinking or correct reasoning, under the doctrine of *res adjudicata.*''

To the same effect is City of Davenport v. Railroad, 38 Iowa 640.

On the other hand, the Supreme Court of the United States in New Orleans v. Citizens' Bank, 167 U. S. 371, et seq., held that where an act of the Legislature exempted the capital of a bank from taxation and its charter was afterwards extended, the exemption continued, and where this exemption had been denied by the city and contested in two different actions, both of which were decided in favor of the exemption, in a subsequent action by the city against the bank for taxes, it was held the former judgments were *res adjudicata* and conclusively estopped the city as to taxes on the

capital stock. That decision has been followed in all subsequent Federal cases. In that case the proposition was distinctly urged that a claim for taxes for one year, being a distinct cause of action from the tax for a subsequent year, the judgment holding that the tax of the prior year could not be assessed or collected, could never be the *subject of the thing adjudged* as to the tax for the future year, notwithstanding the same defense and the same facts upon which it was based were relied on in the subsequent case. Mr. Justice BREWER, speaking for a majority of the court, rejected this contention and held that the estoppel did not depend upon whether the demand was the same in both cases, but existed although there be different demands when the question upon which the second demand depends has under identical circumstances and conditions been previously concluded by a judgment between the parties or their privies.

The proposition that as a matter of public policy the doctrine of *res adjudicata* should not be held to apply to controversies as to taxation was also denied as untenable. Courts of last resort in several of the States have followed the Supreme Court of the United States on both of these points. The principle of *res adjudicata* is a maxim both of the civil and common law.

"The judgment of a court of concurrent (and competent) jurisdiction directly upon the point is, as a plea, a bar; or as evidence, conclusive between the same parties, upon the same matter, directly in question in another court." [Duchess of Kingston's case, 20 State Trials 538; 2 Smith's Leading Cases (6 Amer. Ed.) 663.]

"The authority of *res adjudicata* induces a presumption that everything contained in the judgment is true, and this presumption being *juris et de jure*, excludes every proof to the contrary." [1 Pothier on Obligations, pt. 4, ch. 3, s. 3, art. 3.]

There must be a suit and the judgment must be final; that is, it must settle the matter which it purports to conclude.

Again, the thing demanded must be the same, the demand must be between the same parties and found by them against each other in the same quality.    [Perry v. Dickerson, 85 N. Y. 345.]

The protection afforded by this principle in civil causes is guaranteed in criminal prosecutions by the rule that no one shall be twice put in jeopardy for the same crime.    While the doctrine is everywhere conceded its application often presents serious difficulties. Nowhere is the conflict between the courts of this country more apparent than the exact point now presented on this record.

On the one hand, State courts of last resort and of the highest respectability insist that it is not applicable in an action for a tax for subsequent years for two reasons: first, that it is not the same cause of action; and, secondly, that the State is not estopped; whereas the Supreme Court of the United States and the Federal courts generally and the supreme courts of some of the States reject *in toto* the proposition that the State can not be estopped, holding that when the State submits its cause to the courts it stands on the same plane with other suitors, and judgments for or against it have precisely the same conclusive effect as judgments between other parties.

It seems to us that on this point the reasoning of the Supreme Court of the United States is unanswerable.

The other proposition on which the conflict arises is whether the second suit is based on the same cause of action.

As already noted, the Supreme Courts of Michigan, Tennessee, Iowa and Mississippi reject the plea of *res adjudicata*, because they hold that as the tax sought to be enjoined is for a subsequent year it is not the same, but a new and different cause of action and the facts upon

which the suit is based were not and could not have been in issue, and hence could not have been adjudicated. Whereas the Supreme Court of the United States in New Orleans v. Citizens' Bank, 167 U. S. 371, held in a case in all respects like the one at bar that where in the prior suit the right of exemption pending the continuance of the charter was the subject-matter of the suit and the same exemption was asserted in the subsequent action for taxes, it was the same issue which had been settled in the first suit and that the city was estopped by the judgment decreeing the exemption. So plaintiff in this suit insists that as its two former suits by injunction were founded on its claim of exemption from the taxes for the years 1891 and 1894 and 1895 as to the identical leasehold involved in this suit and the contention was between the same parties, the exemption was the sole and only question involved, and as the circuit court adjudged it was exempt the matter was forever settled. It is evident that as to the general taxes which were enjoined in the two prior injunction suits, there was no change in the conditions between the time of the assessments in 1891, 1894 and 1895 and the taxes sought to be enjoined in this suit.

The plaintiff in those suits was the same, the leasehold was the same, and the exemption asserted was the same, and the facts as to use were the same, as those now before us. The evidence does not show, however, that the special assessments for the park were involved.

The issue, and we may add, the only issue, involved was, was the leasehold exempt because used by an agricultural society? and the court held it was.

Says the Supreme Court of the United States (New Orleans v. Citizens' Bank, supra): "The proposition that because the suit for tax of one year is a different demand from the suit for a tax for another, therefore res adjudicata can not apply, whilst admitting in form the principle of the thing adjudged, in reality substantially denies and destroys it. The estoppel resulting

from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when the question upon which the recovery of the second demand depends has under identical circumstances and conditions been previously concluded by a judgment between the parties or their privies.    This is the elemental rule stated in the text-books and enforced by many decisions of this court.''    [Citing Bank v. Beverly, 1 How. 134; Railroad v. Railroad, 20 Wall. 137; Lumber Co. v̇. Buchtel, 101 U. S. 638; Cromwell v. Sac County, 94 U. S. 351.]

In Hancock v. Singer Mfg. Co., 41 Atl. 846, the Supreme Court of New Jersey ruled that a judgment between the same parties decreeing certain property of the company exempt from taxation for a certain year was *res adjudicata* in a suit to recover taxes on the same property for a subsequent year, the court observing, ''It is a judgment between the same parties, in regard to the same subject, involving the construction of the same contract, and presenting precisely the same questions, both of law and fact, which have been agitated in this case.''

The proposition here involved was also involved in Baldwin v. Maryland, 179 U. S. 220.    In that case where the estate of a ward was held taxable and in a subsequent suit exemption was sought on the same state of facts, the court held that it was *res adjudicata*.    To the same effect see: Railroad v. Commrs., 48 Atl. 853; Bank of Kentucky v. Stone, 88 Fed. 383; Mercantile Nat. Bank v. Hubbard, 105 Fed. 809; Grunert v. Spalding, 104 Wis. 193.

In view of the fact that the exemption of the leasehold was the question at issue in both of the former suits by injunction and that there had been at the time this suit was brought no change either in the law or the facts, and the court having decreed in favor of the exemption, in our opinion the weight of authority and reason is that

the judgment on that exemption became a finality, although in our opinion it was incorrectly so decided. [Chouteau v. Gibson, 76 Mo. 47.]

But in neither of the former cases in the circuit court was the question of exemption of this property for benefits for park or street improvements involved, and no such issue was raised or decided. So much of the taxes for those purposes as are sought to be enjoined were not involved in the former suits.

Moreover, even if the leasehold was exempt under the Constitution and statute passed in pursuance thereof from taxation generally, it was not relieved of the burden of special assessments for streets, sewer, paving and park purposes.

This was expressly held in Sheehan v. Good Samaritan Hospital, 50 Mo. 155, wherein the hospital, though "exempt from taxation of every kind," was held liable for assessments for improvements. [Lockwood v. St. Louis, 24 Mo. 20; Clinton to use v. Henry County, 115 Mo. 557; State ex rel. v. Kansas City, 89 Mo. 34; Kansas City v. Bacon, 147 Mo. 259.]

It results that so much of the decree of the circuit court as restrains the ordinary city taxes described in the petition in these two cases, must be affirmed, and so much thereof as enjoins the park and park maintenance taxes for 1896 and 1897, is reversed. All concur.