**AMERICAN POLLED HEREFORD ASSOCIATION, Appellant,**

v.

**CITY OF KANSAS CITY, Missouri, Respondent.**

**No. 61987.**

Supreme Court of Missouri, Division No. 2.

Jan. 12, 1982.

William B. Prugh, Kansas City, for appellant.

John F. Ingraham, Asst. City Atty., Kansas City, for respondent.

EDWARD D. HODGE, Special Judge.

Appellant, the American Polled Hereford Association, appeals from a judgment and decree denying the Association's claim that it is exempt from real estate taxes levied by respondent, City of Kansas City.

This cause comes here on transfer from the Court of Appeals, Western District, 617 S.W.2d 128. Originally filed here, the cause was transferred to the Western District for the possible application of *Kansas City Exposition Driving Park v. Kansas City*, 174 Mo. 425, 74 S.W. 979 (1903). The Western District found *Driving Park* not controlling and transferred the cause to this Court for interpretation and construction of the applicable state revenue statute. We will refrain from further exploring the precedential significance of *Driving Park* as a means for resolving the issue raised by appellant in this cause. In the interest of judicial economy we feel constrained to address these questions afresh.

Specifically, appellant claims exemption from taxation under the provisions of Article X, Section 6 of the Missouri Constitution (1945), and Section 137.100, RSMo 1978. Three major arguments are urged by appellant Association: First, that it is a non profit agricultural association within the meaning of Article X, Section 6 of the Missouri Constitution of 1945 and Section 137.100, RSMo 1978.[1] Second, that in April 1975, the Circuit Court of Missouri's 16th Judicial Circuit, in two cases, found this appellant exempt from taxation by Jackson County under the aforementioned constitutional and statutory provisions. *American Polled Hereford Association v. State Tax Commission, et al.*, Nos. 764,946 and 767,645, Circuit Court, 16th Judicial Circuit. The appellant asserts that by virtue of these decisions the issue of its exempt status is res judicata and thus respondent City is estopped from assessing and taxing appellant's real property. Finally, appellant argues that to grant the tax exemption to a Missouri not for profit corporation discriminates against a foreign not for profit corporation, as is appellant, in violation of the equal protection guarantees under Article I, Section 2, of the Missouri Constitution and the Fourteenth Amendment to the United States Constitution.

The threshold issue to be resolved can be simply stated: Is the appellant an agricultural society within the meaning of Article X, Section 6 of the Missouri Constitution? If so, appellant is exempt and the questions of res judicata and equal protection would not require our consideration.

Appellant's claimed exemption, being based as it is on the construction of a

---

1. Art. X, Sec. 6, Mo. Const. (1945), provides as follows: Exemptions from taxation. All property, real and personal of the state, counties and other political subdivisions, and nonprofit cemeteries, shall be exempt from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, or for agricultural and horticultural societies may be exempted from taxation by general law. All laws exempting from taxation property other than the property enumerated in this article, shall be void.

Section 137.100(5), RSMo 1978, provides as follows:

The real estate and tangible personal property which is used exclusively for agricultural or horticultural societies heretofore organized, or which may be hereafter organized in this state (shall be exempt from taxation for state, county or local purposes).

state revenue law, is subject to the cardinal rule of statutory construction that laws exempting property from taxation must be strictly construed. The burden of establishing by unequivocal proof that such release is required by the terms of the statute devolves upon the party claiming the exemption. The law granting such immunity must be clear and unambiguous and if any doubt exists it must operate most strongly against the party claiming the exemption. *State ex rel. St. Louis Young Men's Christian Association v. Gehner*, 320 Mo. 1172, 11 S.W.2d 30 (banc 1928); *Fitterer v. Crawford*, 157 Mo. 51, 57 S.W. 532, 533 (1900).

Addressing the issue as to appellant's qualification as an agricultural society, we return to the *Driving Park* decision for a clearer understanding of the significance of that term as used in Article X, Section 6 of the Missouri Constitution (1945), and Section 137.100, RSMo 1978. In *Driving Park*, the history of agricultural societies and agricultural and horticultural societies is set forth in some detail. There, Judge Gantt noted that:

> Prior to the adoption of the Constitution of 1875, the Legislature was forbidden to pass any law exempting any property, real or personal, from taxation 'except such as should be used exclusively for public schools and such as belonged to the United States, to this state, to counties or municipal corporations, within this State.' Const. 1865, art. 11, Sec. 16. As early as 1853 the General Assembly of this state incorporated the Missouri State Agricultural Society Act, Feb. 24, 1853 (Laws, 1852–53, p. 16). By an act of the Legislature approved Dec. 13, 1855 (Laws, 1855, p. 8), that law was repealed, and a new act adopted, dividing the state into agricultural districts, and establishing a society for each, and designating the counties that should constitute such district agricultural society. Their powers were defined by the act. Later, in 1863, the Missouri State Board of Agriculture was created a body corporate, and it was made the duty of all agricultural and horticultural societies to make reports to such state board. The scheme of pro-

> moting county agricultural societies will be found in General Statutes of 1865, pp. 321 to 324. These societies were intended to promote agricultural manufactures and raising stock. The county courts were authorized to vote money for premiums, and they were adjuncts of the State Board of Agriculture, and the presidents of said county societies were ex officio members of the State Board of Agriculture, and they were required to make reports of their transactions to the State Board. These county agricultural and horticultural societies were thus provided for in the General Statutes of this state when the constitutional convention of 1875 met and organized, and these statutes were continued in our general revision in 1899 (Rev.St. 1889, pp. 178 to 183, inclusive) . . . .

*Driving Park*, 74 S.W. at 981.

■ The same terminology has been preserved in Article X, Section 6 of the Missouri Constitution of 1945, and in Section 137.100, RSMo 1978, under which the exemption is claimed by this appellant. It is apparent, as indicated by Judge Gantt in *Driving Park*, that these agricultural societies have been favored objects of the state's bounty for many years. It is equally apparent to this Court that appellant, notwithstanding its not for profit corporate status, is not one of these unique quasi state or county organizations referred to in the Constitution and statutes as an agricultural or agricultural and horticultural society. It appears quite clear from this historical review that neither the constitutional nor the statutory provision was intended to exempt all not for profit corporations engaged in agricultural activities, but only those unique societies organized as adjuncts of the State Board of Agriculture. We find the appellant does not come within the term "agricultural society" and that the statutory exemption is inapplicable.

Having concluded that appellant is not an "agricultural society" within the meaning of the statute and Constitution, we must turn to appellant's assertion that by virtue of the doctrine of collateral estoppel respon-

dent is estopped from assessing and collecting taxes on appellant's real property.

Traditionally, res judicata (claim preclusion) precludes the same parties or their privities from relitigating the same cause of action whereas collateral estoppel (issue preclusion) precludes the same parties or those in privity from relitigating issues which have been previously litigated. *Oates v. Safeco Insurance Co. of America*, 583 S.W.2d 713 (Mo.banc 1979). Applying this traditional analysis, it becomes apparent that appellant's claim is one of issue preclusion rather than claim preclusion, as the cause of action under review pertains to the levy and assessment of city taxes whereas the prior adjudication related to a cause of action for the collection of taxes by Jackson County. A critical distinction is made between claim preclusion and issue preclusion: Where the question is one of issue preclusion the established rule is that the judgment in the prior adjudication operates only as to the issues, points, or questions actually litigated and determined and not as to matters not litigated in the former action even though such matters might properly have been determined therein. *Schmitt v. Pierce*, 379 S.W.2d 548 (Mo. 1964); 46 Am.Jur.2d *Judgments*, § 418 (1969).

Thus, for appellant to prevail as to its claim of issue preclusion, two questions must be affirmatively answered. First, was respondent City in privity with the plaintiff County in the prior adjudication in the Circuit Court of Jackson County? Second, was the specific issue in the case now before this Court actually litigated and determined in the prior adjudication?

As to the question of privity, appellant argues that because respondent City derives its statutory powers from the state law, respondent is therefore in privity with the state of Missouri and bound by a prior judgment against another political subdivision of the state, *i.e.* Jackson County, wherein the question of appellant's tax exemption was considered. We find none of the cases cited by appellant in its brief support such a sweeping conclusion. It is settled law that privity within the meaning of the doctrine of issue preclusion is privity as it exists in relation to an identity of interests in the subject matter of the litigation. It is not established from the mere fact that persons may happen to be interested in the same question, or in proving or disproving the same state of facts. *Drainage District No. 1 Reformed v. Matthews*, 361 Mo. 286, 234 S.W.2d 567 (Mo.1950); 46 Am.Jur.2d, *Judgments* § 532 (1969).

The subject matter of the Jackson County cases was the assessment and collection of county taxes and appellant's claimed exemption therefrom. The subject matter of the cause now before this Court is the assessment and collection of taxes by the City of Kansas City and appellant's claimed exemption. Clearly, the city had no interest in the collection of the county taxes in the prior adjudication.

In support of its contention that City is estopped from denying appellant's exemption, appellant cites in its brief *Varnal v. Kansas City*, 481 S.W.2d 575 (Mo.App.1972). In *Varnal*, privity was found between the City of Kansas City and an employee of the city acting in his official capacity. The subject matter of the two actions was identical. In *Seibert v. City of Columbia*, 461 S.W.2d 808 (Mo.banc 1970), also cited by the appellant, the issue of res judicata was eliminated from the case because the prior judgment was affirmed not on its merits, but because the plaintiff was found to lack capacity to sue. Further, there was clearly an identity of interests in the subject matter in that case; that is the right of the City of Columbia, Missouri, to annex a specific area. Neither the *Varnal* nor *Seibert* case supports appellant's claim of privity here.

Although it is apparent that the interpretation of Article X, Section 6 of the Missouri Constitution of 1945, and of Section 137.100, RSMo 1978, was and is a matter in which the respondent City is interested, such identity of interests in the legal interpretation of the constitutional provision and the statute does not constitute an identity

of interests in the subject matter of the prior adjudication. If such were the case, the logical extension of the argument would necessarily result in the conclusion that every municipality within the state of Missouri was in privity with Jackson County and would be precluded from raising this issue in other litigation. Further, if the County had prevailed in the prior litigation, again the logical extension of such an argument as propounded by appellant would be to hold that all non profit corporations involved in agriculture and located anywhere within the boundaries of the state of Missouri would be considered to have been in privity with the appellant in its 1975 litigation in the Circuit Court of the 16th Judicial Circuit. Such a far-reaching concept of issue preclusion we believe clearly violates the constitutional basis upon which the doctrine is founded.

In *Postal Telegraph Cable Co. v. Newport*, 247 U.S. 464, 476, 38 S.Ct. 566, 570–71, 62 L.Ed. 1215 (1918), the United States Supreme Court stated:

> The doctrine of res judicata rests at bottom upon the ground that the party to be affected, or some other party with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction.... The opportunity to be heard is an essential requisite of due process of law in judicial proceedings.... [S]o [a State] cannot without disregarding the requirements of due process, give a conclusive affect to a prior judgment against one who is neither a party nor in privity with a party therein.

We conclude that the respondent City was not in privity with Jackson County in the 1975 adjudications in the 16th Judicial Circuit for the reason that respondent did not possess an identity of interests in the subject matter of those causes.

Further, we note that the precise question as to appellant's qualification as an "agricultural society" was not presented or considered in the prior adjudication and could therefore not be precluded from consideration here, even had privity been found.

■ We turn now to appellant's third claim of error, that to deny appellant tax exemption is a violation of the equal protection provisions of the Missouri and the United States Constitution.

It appears clear from an examination of the judgment entered by the 16th Judicial Circuit in the 1975 litigation between Jackson County and this appellant, that said judgment was based upon the assumption that appellant's exemption had been denied solely because it was a foreign corporation not organized in this state. Appellant attempts, we believe incorrectly, to frame the equal protection question in the same manner in this cause. We note, however, that here the respondent does not seek to deny the exemption because appellant was not organized in this state pursuant to Section 137.100, RSMo 1978; but, because appellant is not an "agricultural society" within the meaning of Article X, Section 6 of the Missouri Constitution (1945) and Section 137.100, RSMo 1978, and we have so found.

Appellant stands in the same position as do non profit domestic corporations engaged in agricultural pursuits that find themselves unable to qualify as agricultural societies within the historical definition of the term.

Thus, the narrowed issue as to constitutional equal protection is this: Is it a violation of equal protection provisions of the state and federal constitution for the state legislature to exempt these unique county agricultural societies from taxation and to exclude from the exemption other agricultural non profit corporations, both domestic and foreign?

It has long been recognized that states may treat classes or individuals differently without violating the equal protection clause of the United States Constitution. In *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973), cited by respondent in its additional brief filed on transfer of this cause from the Western District, the United States Supreme Court stated:

The equal protection clause does not mean that a state may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is a invidious discrimination. *Harper v. Virginia Board of Elections*, 383 U.S. 663, 666, 86 S.Ct. 1079 [1081], 16 L.Ed.2d 169. Where taxation is concerned and no specific federal right apart from equal protection is imperiled, the states have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.

We find the long-standing exemption by our state legislature of these unique agricultural societies has been based upon valid state interests, and that such exemption has not been shown to constitute invidious discrimination as to other agricultural corporations, foreign or domestic.

One further attack on the judgment of the trial court is pursued by the appellant. Citing Section 11(a) of Article X of the Missouri Constitution, appellant contends that respondent is prohibited from assessing appellant's property in excess of the amount of the assessment of that property by Jackson County. Noting that the county exempted appellant's property, appellant now claims that the county assessment must be regarded as zero in amount and, thus, respondent is prohibited from assessing appellant's property in excess of zero.

In *Defenders' Townhouse, Inc. v. Kansas City*, 441 S.W.2d 365 (Mo.1965), this identical argument was considered and rejected. There, as here, the parties had stipulated to the county's assessed valuation and the city's assessment was not in excess of that of the county. (Agreed Statement of Facts, p. 6).

We find Section 11(a) of Article X of the Missouri Constitution does not prohibit the assessment of appellant's property by respondent City.

Judgment affirmed.

WELLIVER, P. J., HIGGINS and SEILER, JJ., and REINHARD, Special Judge, concur.