# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3676

_____

| | | |
|---|---|---|
| John Delcastillo; Lois Diane Delcastillo, | * | |
| | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Odyssey Resource Management, Inc.; 1st Odyssey Group, | * | |
| | * | |
| | * | |
| Defendants - Appellants, | * | |

_____

Submitted: June 20, 2005
Filed: December 23, 2005 (Corrected: 01/05/06)

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

In August 1996, John Delcastillo was severely injured while working at a GLNX rail car repair facility in Omaha owned by Houston J-M Corporation. He began receiving health insurance benefits under a GLNX-sponsored group policy issued by United Healthcare Insurance Company. His benefits continued after Integrated Rail Products (IRP) purchased the assets of GLNX in October 1997. However, further benefits were denied after IRP replaced the United Healthcare policy with a health care plan provided by Reliance Insurance Company.

Delcastillo and his wife Diane commenced this action against multiple defendants under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. §§ 1161-68.  After other defendants were dismissed, the district court held a two-day bench trial and concluded that Odyssey Resource Management and 1st Odyssey Group are jointly and severally liable to the Delcastillos for breach of ERISA fiduciary duties and for failure to provide the notices of their right to continuation coverage mandated by COBRA.  The court awarded a total of $306,866.11 for COBRA statutory penalties and compensatory damages and $109,317.50 in attorneys' fees and costs.  Delcastillo v. Odyssey Resource Mgmt., Inc., 320 F. Supp. 2d 889, 901 (D. Neb. 2004).  The Odyssey defendants appeal.  We conclude that the Delcastillos were covered by the Reliance plan at its inception.  Therefore, they may be entitled to recover unreimbursed medical expenses under ERISA but are not entitled to recover statutory penalties under COBRA.  Accordingly, we reverse  and remand.

## I. Factual Background

When John Delcastillo was injured in 1996, Odyssey Management, Inc., served as "co-employer" of the GLNX employees under a Staff Services Agreement with Houston J-M Corporation.  As co-employer, Odyssey Management was responsible for complying with COBRA and ERISA for any plans that it administered.[1]  However, Odyssey Management did not administer the United Healthcare health plan

---

[1]The Odyssey companies are professional employer organizations that offer small and mid-size companies services aimed at complying with federal, state, and local employment-related laws and regulations.  About 700 PEOs currently operate in all 50 states, co-employing 2-3 million Americans.  See generally Employers Res. Mgmt. Co., Inc. v. Shannon, 65 F.3d 1126, 1128-29 (4th Cir. 1995), cert. denied, 516 U.S. 1094 (1996); National Ass'n of Professional Employer Organizations website (visited Oct. 27, 2005) <http://www.napeo.org>.

for GLNX employees. Delcastillo was a participant in that plan. GLNX was the policyholder of the United Healthcare group health policy.

Delcastillo did not return to work after his 1996 accident. He and his wife continued receiving health care benefits under the United Healthcare policy. In November 1997, after IRP purchased the GLNX assets, Delcastillo received the following letter from IRP's Manager of Benefits Administration:

> This letter is to let you know that GLNX-Omaha was sold effective October 15, 1997. As of that date all employees of GLNX-Omaha were terminated.
>
> GLNX-Omaha no longer exists as of the aforementioned date. Houston J-M Corp. will pay your health insurance coverage until you have reached MMI [maximum medical improvement].

The Delcastillos continued to receive health care benefits from United Healthcare. The explanation of benefits forms from United Healthcare identified IRP as the policyholder of the same group policy previously held by GLNX.

When it acquired GLNX, IRP engaged Odyssey Resource Management to serve as co-employer of GLNX employees under a Staff Services Agreement virtually identical to the agreement between Odyssey Management and Houston J-M Corporation.[2] Odyssey became responsible to IRP for complying with COBRA and ERISA "for any plans it administered." However, Odyssey did not administer the

---

[2]Odyssey Management and defendant Odyssey Resource Management were separate subsidiaries of Supreme Enterprises, Inc. Defendant 1st Odyssey Group is a related company, apparently owned by Supreme Enterprises shareholders, that took over the assets and service agreements of Odyssey Resource Management at the end of the year 2000. For convenience, we will refer to the Odyssey defendants as "Odyssey," except when there is a need to differentiate between them.

United Healthcare plan for IRP, and the Delcastillos continued to receive benefit payments from United Healthcare.

In January 1999, IRP engaged Odyssey to sponsor a health care plan. Odyssey terminated the United Healthcare policy and purchased a group health care policy from Reliance. Odyssey as co-employer served as the plan sponsor. See 29 U.S.C. § 1002(16)(B)(i). The Loomis Company served as a third-party administrator responsible for paying claims on behalf of Reliance.[3] To enroll eligible participants in the new health care plan, an Odyssey account manager, Linda Reyna, went to the IRP work site, where active employees filled out application forms that Odyssey sent to Loomis. The disabled Delcastillo was not at the work site and therefore was not enrolled in the plan.

Shortly thereafter, when Diane Delcastillo was denied coverage for a prescription drug, she called IRP to inquire. IRP's human resources director called Reyna, told her that IRP "had missed an employee when we did the enrollment," and instructed Reyna to send enrollment forms to Delcastillo. The Delcastillos promptly filled out and returned the forms and received health insurance cards from Odyssey. When Diane continued to be denied coverage, she called Loomis and was told she had coverage. When she asked the Nebraska Department of Insurance to investigate, Reliance assured the Department that Delcastillo was a covered employee and sent Delcastillo a certificate of coverage in August 1999. However, Odyssey pursued the coverage question internally, and Loomis "pended" approximately $27,000 of claims submitted by the Delcastillos because of the lingering coverage uncertainty. Ultimately, Odyssey and Reliance concluded that Delcastillo was not eligible for coverage and refused to pay the claims. On July 5, 2000, Odyssey sent Loomis a

_____

[3]The record does not establish whether Odyssey or Loomis was the plan "administrator" for ERISA purposes. See 29 U.S.C. § 1002(16)(A); Coker v. Trans World Airlines, Inc., 165 F.3d 579, 582 (7th Cir. 1999).

-4-

notice that Delcastillo's coverage was canceled effective June 30. On July 19, Loomis sent Delcastillo a COBRA notice explaining that his group health coverage terminated on June 30 and that he was eligible for continuation coverage for up to eighteen months following this "qualifying event."

The Delcastillos filed this action against Odyssey Resource Management, 1st Odyssey Group, Loomis, and Reliance. After dismissing Reliance (apparently because of insolvency), they filed an amended complaint against the Odyssey defendants and Loomis seeking statutory penalties for their failure to give continuation coverage notices mandated by COBRA, reimbursement of medical expenses incurred, and an injunction granting future health insurance coverage. The Delcastillos dismissed Loomis prior to trial.

After trial, the district court held the Odyssey defendants jointly and severally liable for statutory penalties based on their failure to give both an initial COBRA notice of the Delcastillos' statutory right to continuation coverage after a qualifying event, and their failure to give timely notice of a qualifying event. The court further held the Odyssey defendants liable for the Delcastillos' unpaid medical expenses based on affirmative misrepresentations as to coverage made after the Reliance/Odyssey/IRP plan took effect on February 1, 1999.

## II. Coverage under the Reliance Plan

Odyssey's defense to all the Delcastillos claims is premised on the contention that John Delcastillo was never covered under the Reliance/Odyssey/IRP health care plan because the Reliance group policy provided that only an IRP employee who works "regularly throughout an employer's entire work week . . . at any of the employer's business locations" is eligible for coverage. As Delcastillo was not working regularly when Odyssey began providing health care benefits to IRP employees through the Reliance policy, the Odyssey defendants argue, there was no

coverage and the Delcastillos' benefit claims were properly denied.  See Turner v. Safeco Life Ins. Co., 17 F.3d 141 (6th Cir. 1994).  Moreover, the argument concludes, Odyssey did not become responsible for any required COBRA notices.

The Delcastillos do not seriously challenge Odyssey's interpretation of the eligibility provisions of the Reliance group policy.  But they do argue that Delcastillo was initially covered under the Reliance policy by reason of the following provision:

REPLACEMENT OF COVERAGE

This provision shall apply when this Policy is replacing a prior plan of similar group coverage that the Employer had with another insurer. When this happens, the following provisions apply:

a) this Policy will cover all persons who were covered under the previous policy on the date it was discontinued . . . .

We interpret the terms of the policy *de novo* when, as here, there is no claim that the ERISA plan granted any fiduciary discretionary authority to construe the policy.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

In our view, the Replacement of Coverage provision describes precisely the situation here.  The Reliance policy replaced IRP's "prior plan of similar group coverage" with United Healthcare.  United Healthcare benefit statements in the record are uncontroverted proof that the Delcastillos "were covered under the previous policy on the date it was discontinued."  In these circumstances, it does not matter whether John Delcastillo was working regularly when the Reliance policy was issued, or whether he was even an IRP "employee" at that time.  It is enough that he was a covered plan participant under the health care plan being replaced.  In a competitive market for the sale of ERISA plan services, one would expect to find this type of replacement coverage provision in a group health policy, because it enables

-6-

employers to switch ERISA plan providers with the assurance that coverage continuity will be preserved.

Odyssey argues that the Replacement of Coverage provision does not apply because Odyssey Resource Management, Inc. was the "employer" under the Reliance policy and did not provide insurance to IRP employees prior to February 1, 1999. This contention is so contrary to reality and to the policies underlying ERISA that it jeopardizes judicial acceptance of the co-employer artifice. IRP chose to replace the group health coverage previously provided to its employees by United Healthcare. IRP engaged Odyssey as a limited "co-employer" for the purpose of sponsoring the replacement plan. The fact that IRP was the United Healthcare policyholder and Odyssey became the Reliance policyholder does not alter the reality that IRP obtained "replacement coverage" for its employees. Thus, it is not surprising that, in the months following February 1, 1999, representatives of IRP, Loomis, and Reliance all assured the Delcastillos and the Nebraska Department of Insurance that the Delcastillos were covered under the Reliance group policy. If the right to ERISA benefits could be altered by the essentially non-substantive provision in Odyssey's contract with IRP making Odyssey a "co-employer," the decision to engage PEOs as co-employers might well violate ERISA fiduciary duties.

As Delcastillo was covered under the United Healthcare policy when IRP and co-employer Odyssey changed health care providers, we hold that Delcastillo was *initially* covered under the Reliance policy's replacement coverage provision. Odyssey did not instruct Loomis to terminate this coverage until June 30, 2000. The Delcastillos do not challenge Odyssey's right to terminate coverage at that time. Accordingly, the Delcastillos were covered from February 1, 1999, to June 30, 2000.

### III.  COBRA Notice Requirements and Statutory Penalties

COBRA requires that a group health plan provide, "at the time of commencement of coverage under the plan, written notice to each covered employee . . . of [his COBRA] rights."  29 U.S.C. § 1166(a)(1).  Those rights include the sponsoring employer's obligation to offer continuation coverage to employees and their spouses for at least eighteen months following a "qualifying event" that results in a loss of group health plan coverage.  See 29 U.S.C. §§ 1161(a), 1162(2), 1163. When a qualifying event occurs, the plan administrator must give a timely additional notice of the right to elect continuation coverage.  See 29 U.S.C. § 1166(a)(4).  A plan administrator that fails to meet either or both of these notice requirements "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure . . . and the court may in its discretion order such other relief as it deems proper."  29 U.S.C. § 1132(c)(1).

In this case, the district court found that Odyssey provided no initial COBRA notice under the Reliance/Odyssey/IRP plan until August 10, 1999, and no qualifying event notice until July 19, 2000.  Accordingly, the court awarded "statutory penalties in the amount of $110.00 per day for each plaintiff for . . . failure to provide COBRA notice measured from February 1, 1999, until July 19, 2000 . . . and for 18 months thereafter, plus statutory penalties in the amount of $110.00 per day for each plaintiff for failure to provide notice of COBRA rights measured from February 1, 1999, until August 10, 1999."  320 F. Supp. 2d at 901.  If the questions were squarely presented, we would not affirm this manner of measuring the statutory penalty periods, nor the discretionary decision to award 110% of the statutory maximum daily penalty for these extended periods of time.  But we need not reach those questions, for we conclude that there were no COBRA notice violations as a matter of law.

The Initial Notice Issue.  As we have explained, the Delcastillos were initially covered under the Reliance group policy when it took effect on February 1, 1999.

The obligation to provide an initial COBRA notice attaches "at the time of commencement of coverage under the plan." 29 U.S.C. § 1166(a)(1). A new group health plan was not created when IRP purchased the GLNX assets and was substituted as policyholder under the United Healthcare group policy in 1997, nor when IRP changed plan providers by switching from the United Healthcare group policy to the Reliance group policy on February 1, 1999. In each case, the existing plan continued in effect, an event that does not give rise to a new initial notice obligation under COBRA. See Truesdale v. Pacific Holding Co., 778 F. Supp. 77, 82-83 (D.D.C. 1991); Charles O. Hiler & Sons, Inc. v. Cole, 605 N.E.2d 235 (Ind. Ct. App. 1992).

Absent evidence to the contrary, we must assume that Delcastillo received an initial COBRA notice at the commencement of his coverage under the GLNX/United Healthcare plan. As that coverage continued under the Reliance plan by virtue of the Replacement of Coverage provision, Delcastillo was not entitled to an additional initial COBRA notice in February 1999. Therefore, we vacate in its entirety the district court's award of statutory penalties based upon Odyssey's alleged failure to provide an initial COBRA notice.

The Qualifying Event Notice Issue. Without identifying the qualifying event, the district court awarded substantial statutory penalties for Odyssey's failure to provide the qualifying event notice mandated by 29 U.S.C. § 1166(a)(4) until July 19, 2000. As the statutory penalty runs "from the date of such failure," 29 U.S.C. § 1132(c)(1), and as the court began the penalty period on February 1, 1999, the court apparently concluded that switching the health care plan provider from United Healthcare to Reliance was a qualifying event. That was an error of law. Consistent with the plain language of 29 U.S.C. § 1163, the applicable regulation defines a qualifying event as one that "causes the covered employee . . . to lose coverage under the plan." 26 C.F.R. § 54.4980B-4, Q&A-1(c). As we have explained, Delcastillo

did not lose coverage when his employer switched to the Reliance plan in February 1999, so no notice was required.

The Delcastillos' coverage under the Reliance policy continued until Odyssey terminated coverage effective June 30, 2000. This was clearly a qualifying event. Therefore, Delcastillo was entitled to a COBRA election notice. COBRA provides that the employer must notify the administrator of a qualifying event within thirty days, 29 U.S.C. § 1166(a)(2), and the administrator must notify the beneficiary within fourteen days of receiving notice from the employer, 29 U.S.C. § 1166(c). Here, it is undisputed that Odyssey notified plan administrator Loomis of the coverage termination on July 5, 2000, and that Loomis sent Delcastillo the required COBRA notice on July 19. Thus, both Odyssey and Loomis complied with their COBRA notice obligations regarding the June 30 termination of coverage.[4] The district court's award of statutory penalties for failure to give a COBRA notice upon the occurrence of a qualifying event is vacated in its entirety.

## IV. Recovery of Benefits Wrongfully Denied

ERISA expressly provides a plan participant or beneficiary such as the Delcastillos a cause of action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). The Delcastillos asserted no claim under § 1132(a)(1)(B). Instead, they sought to recover denied benefits on the theory, as explained in their brief on appeal, that "[b]y failing to provide coverage, Odyssey violated their statutory fiduciary duty." It is true that a plan administrator acts in a fiduciary capacity in making benefits decisions, and ERISA provides a distinct cause

---

[4]If Loomis was not the ERISA plan administrator, see note 3, *supra*, the applicable regulation provides that Odyssey as employer was the plan administrator and must provide notice within 44 days of the qualifying event, in which case the July 19 notice was still timely. See 29 C.F.R. § 2590.606-4(b)(2).

of action for "other appropriate equitable relief" to remedy a breach of ERISA fiduciary duties. 29 U.S.C. § 1132(a)(3). But "where Congress elsewhere provided adequate relief for a beneficiary's injury [such as an action for wrongful denial of benefits under § 1132(a)(1)(B)], there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Varity Corp. v. Howe, 516 U.S. 489, 515 (1996); see Geissal v. Moore Med. Corp., 338 F.3d 926, 933 (8th Cir. 2003), cert. denied, 540 U.S. 1181 (2004). Moreover, only equitable relief, not money damages, may be awarded under § 1132(a)(3). See Great-West Life & Ann. Ins. Co. v. Knudson, 534 U.S. 204, 209-10 (2002).

Though the Delcastillos did not assert a wrongful denial claim in their amended complaint, the coverage issue was obviously tried by consent because the court's Order on Final Pre-Trial Conference listed as an unresolved issue, "[w]hether Plaintiffs were actually eligible (at any of the relevant times) to participate in any group health plan sponsored by Defendants." See Fed. R. Civ. P. 15(b); Miller v. Mills Constr., Inc., 352 F.3d 1166, 1171 (8th Cir. 2003). The Odyssey defendants argued in the district court and on appeal that the Delcastillos lacked standing to assert a claim for breach of fiduciary duties because John Delcastillo was never covered by the Reliance policy. That contention falls with our resolution of the coverage issue. The record on appeal does not reveal whether Odyssey also argued to the district court that the Delcastillos may not recover wrongfully denied benefits under a breach of fiduciary duty theory because the remedy under § 1132(a)(1)(B) is exclusive. Thus, there may be an issue whether that defense has been waived. In addition, the district court's decision did not explain either the nature or the amount of the "special damages" being awarded. Accordingly, we remand to the district court for further consideration of whether the Delcastillos are entitled to recover damages equal to their unreimbursed covered medical expenses during the period from February 1, 1999, to June 30, 2000. However, we reverse the court's alternative award of statutory penalties for "breach of fiduciary duty," 320 F. Supp. 2d at 901, because "the Supreme Court has stressed that ERISA does not create compensatory

or punitive damage remedies where an administrator of a plan fails to provide the benefits due under that plan." Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 198 (1st Cir. 1997), cert. denied, 523 U.S. 1072 (1998), citing Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985).

## V.  The Alter Ego Issue

The district court concluded that Odyssey Resource Management and 1st Odyssey Group are jointly and severally liable to the Delcastillos based on its finding that they acted as alter ego corporations "used to perpetuate the denial of Mr. Delcastillo's notice and benefits and to create confusion about the Delcastillos' recourse and remedies." Defendants appeal the alter ego determination. Apparently, this issue arose in the district court when defense counsel intimated that the Odyssey defendants would be judgment proof because Odyssey Resource Management is a dormant shell and 1st Odyssey Group was not involved in the events at issue. Because this issue may lose its relevance given our disposition of the appeal, we decline to consider it at this time. We note, however, that a PEO organization that uses multiple corporate entities to frustrate the recovery of valid ERISA claims might become subject to drastic ERISA remedies, such as an order permanently enjoining the culpable parties from acting as a service provider to any ERISA plan. See Martin v. Feilen, 965 F.2d 660, 673 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993).

## VI. Attorney's Fees and Costs

ERISA provides the district court discretion to award "a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Applying our decision in Lawrence v. Westerhaus, 749 F.2d 494, 495 (8th Cir. 1984), as modified by our en banc decision in Martin v. Arkansas Blue Cross & Blue Shield, 299 F.3d 966 (8th Cir. 2002), cert. denied, 537 U.S. 1159 (2003), the district court awarded attorney's fees and costs in the amount of $109,317.50. We have reversed the court's

decision on the COBRA notice claims and the bulk of the court's damage and penalties award, and we have remanded for further consideration of whether the Delcastillos may prevail on their claim for recovery of unreimbursed covered medical expenses. Accordingly, we vacate the attorney's fee award. On remand, if the Delcastillos prevail on their remaining claim, the district court should redetermine whether to exercise its discretion to award an attorney's fee, bearing in mind that "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley v. Eckerhart, 461 U.S. 424, 440 (1983).

## VII. Conclusion

The judgment of the district court is reversed, and the case is remanded for further post-trial proceedings not inconsistent with this opinion.

_____