# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1965

_____

Tanya J. Fjelsta,       *
      *
     Plaintiff - Appellant,       *
      *    Appeal from the United States
     v.       *    District Court for the
      *    District of Minnesota.
Zogg Dermatology, PLC, et al.,       *
      *
     Defendants - Appellees.       *

_____

Submitted: November 13, 2006
Filed: May 29, 2007

_____

Before LOKEN, Chief Judge, LAY[*] and MELLOY Circuit Judges.

_____

LOKEN, Chief Judge.

Registered nurse Tanya Fjelsta sued her former employer, Zogg Dermatology, a clinic in Albert Lea, Minnesota, and the clinic's supervisors, medical director Brian Zogg and office manager Deanne Zogg. Fjelsta asserted retaliation claims under the Minnesota Whistleblower Act, Minn. Stat. § 181.932; pregnancy discrimination claims under Title VII and the Minnesota Human Rights Act; and claims of

_____

[*]The HONORABLE DONALD P. LAY assumed permanent disability retirement status on January 3, 2007, and died on April 29, 2007. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. R. 47E.

defamation and battery. Fjelsta appeals the district court's[1] grant of summary judgment. Fjelsta v. Zogg Dermatology PLC, No. Civ. 04-1717, 2006 WL 475283 (D. Minn. Feb. 28, 2006). Reviewing the grant of summary judgment *de novo* and the evidence in the light most favorable to Fjelsta, the non-moving party, we affirm.

## I. Background

Fjelsta began working at the clinic on January 27, 2003. At the end of a ninety-day probationary period, she received a guardedly positive written review and an offer of permanent employment, which she accepted. In early June, Roxanne Medd, the clinic's other full-time nurse, advised that she was pregnant. Fjelsta alleges that Deanne Zogg told her, "Tanya, you better take precautions so both you girls don't end up pregnant. We can't have both nurses gone at the same time." On July 10, Fjelsta told Deanne Zogg she was pregnant. On July 23, Deanne Zogg gave Fjelsta an unfavorable written six-month performance review that placed her on ninety-day probation. Among other criticisms, the review noted that Fjelsta had failed to follow proper sterile procedures during a recent surgery.

On August 11, Fjelsta delivered a lengthy written response to the negative six-month review. This letter addressed many criticisms in the review but not Fjelsta's alleged failure to follow proper sterile procedures during the recent surgery. Instead, the letter's "final rebuttal" returned to a subject Fjelsta and Deanne Zogg had previously discussed -- whether the clinic should change its policy of reusing a syringe with a new sterile needle attached to draw medication from a multi-dose vial and then using that multi-dose vial with other patients. Fjelsta's letter reiterated her view that this practice was inappropriate "even with excellent technique" and stated:

---

[1]The HONORABLE JOAN N. ERICKSEN, United States District Judge for the District of Minnesota.

I cannot and will not accept your policy for the use of multi-dose vials. . . . I will continue to dispose of these contaminated multi-dose vials, as I cannot knowingly inject a patient with medication contaminated by other patients' blood products. . . . The office procedure on [multi-dose vials] as you have instructed me violates Minnesota Rule 6950.1060 Subp. 2A. . . . I do believe that I am very knowledgeable when it comes to the many aspects of sterile procedures and the improper use of [multi-dose vials] that occurs in this office needs to be rectified now. . . . I would like to . . . discuss further this evaluation and also set up corrective action plan, as you seem [sic] fit.

Deanne Zogg reviewed Fjelsta's letter and gave it to Dr. Zogg. Less then thirty minutes later, he summoned Fjelsta to his office and asked her to leave for the day. Fjelsta asked why; Deanne Zogg said it was for "insubordination." When Fjelsta refused to leave, Dr. Zogg escorted her from the clinic, forcibly though not painfully, and locked the outside door. According to affidavits submitted by two clinic employees, Deanne Zogg then called a meeting and informed staff that Fjelsta had been terminated. Later that day or the next, Fjelsta sent Zogg Dermatology an e-mail asking the clinic to confirm that she had been terminated. She also contacted two Percs officials seeking to clarify her status.[2] After checking with Deanne Zogg, they advised Fjelsta she was not terminated. On August 13, Deanne Zogg sent Fjelsta an e-mail advising that she was still an employee and instructing her to report to work the following Tuesday. Fjelsta did not return to work. This lawsuit followed.

## II. Discussion

**A. Whistleblower Act.** Fjelsta first argues that the district court erred in dismissing her claim under Minn. Stat. § 181.932, subd. 1(a), which provides that an

---

[2]Percs USA, Inc., was Zogg Dermatology's professional employer organization. See generally Delcastillo v. Odyssey Resource Mgmt., Inc., 431 F.3d 1124, 1126 & n.1 (8th Cir. 2005).

employer may not discharge or punish an employee because the employee "in good faith, reports a violation or suspected violation" of any state law or rule. To recover on this claim, Fjelsta must prove that Zogg Dermatology took adverse employment action against her because she engaged in statutorily protected conduct, here, making a good faith report of a suspected violation of law. See Nichols v. Metro. Ctr. for Indep. Living, Inc., 50 F.3d 514, 516 (8th Cir. 1995). There is no question Fjelsta submitted a letter asserting a violation of a specific state rule, Minn. R. 6950.1060, subp. 2A. "The central question is whether the report [was] made for the purpose of blowing the whistle, i.e., to expose an illegality." Obst v. Microtron, Inc., 614 N.W.2d 196, 202 (Minn. 2000).

The district court dismissed this claim on the ground that Fjelsta's letter was not a report for purposes of § 181.932, subd. 1(a), because "there is no evidence in the record to demonstrate that Fjelsta made the report for the purpose of exposing an illegality." We agree. Fjelsta testified that, before writing the letter, she discussed her concerns about the clinic's multi-dose vial policy in a "lengthy conversation" during which Deanne Zogg explained why the clinic's policy was proper, and Fjelsta questioned that explanation. Thus, Zogg Dermatology was well aware of the alleged violation before Fjelsta wrote the letter. In these circumstances, "it would seem that there was no whistle to blow." Obst, 614 N.W.2d at 203. The purpose of Fjelsta's letter was not to expose illegality. Rather, it "merely expressed her dissatisfaction with [the clinic's] conduct and policy" in an attempt to deflect the performance review's criticism of her knowledge of sterile procedures. Hitchcock v. Fedex Ground Package Sys., Inc., 442 F.3d 1104, 1106 (8th Cir. 2006).

Fjelsta argues that, for summary judgment purposes, the district court was required to accept as true her testimony that she wrote the letter in a good faith effort to expose her employer's wrongdoing. We disagree. "Whether an employee made a report in 'good faith' is a question of fact, but the court may determine as a matter of law that certain conduct does not constitute a report for purposes of the

-4-

Whistleblower Act." Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. App. 2001). As no reasonable jury could find that Fjelsta wrote the letter for the purpose of exposing a previously unknown illegality, summary judgment was proper.

Fjelsta's appeal brief also quotes another provision of the Whistleblower Act, § 181.932, subd. 1(c), which prohibits an employer from punishing an employee who "refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law," and who "informs the employer that the order is being refused for that reason." This is a distinct claim, and Fjelsta's letter response could be read as falling within the purview of this provision by declaring her refusal to obey the clinic's multi-dose vial policy. However, Fjelsta's complaint did not assert this claim, her summary judgment brief to the district court did not raise the issue, and her briefs on appeal did not develop the argument. Therefore, we decline to consider the issue, both because it would present factual issues not resolved in the district court, and because of the "inherent injustice" of allowing a party to raise a claim or legal theory for the first time on appeal. See Von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 376 (8th Cir. 1997).

**B. Pregnancy Discrimination.** The Pregnancy Discrimination Act amended Title VII to provide that discrimination "on the basis of pregnancy" is a form of sex discrimination. See 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1); Lang v. Star Herald, 107 F.3d 1308, 1311 (8th Cir.), cert. denied, 522 U.S. 839 (1997). The Minnesota Human Rights Act (MHRA) includes the same prohibition, and the Minnesota courts apply the same Title VII analysis. See Minn. Stat. §§ 363A.03, subd. 42, 363A.08, subd. 2; Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 574 (8th Cir. 1997). Fjelsta argues that the district court erred in dismissing her claims under these statutes because she submitted sufficient evidence that Zogg Dermatology placed her on probation and then terminated her on account of her pregnancy.

A Title VII plaintiff may avoid summary judgment by presenting "direct evidence" of sex discrimination, that is, "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (quotation omitted). Fjelsta's primary argument on appeal is that the district court erred in concluding that Deanne Zogg's remark -- "Tanya, you better take precautions so both you girls don't end up pregnant. We can't have both nurses gone at the same time" -- was not direct evidence of pregnancy discrimination. We agree with the district court. The remark stated the employer's obvious self-interest in not having both full-time nurses take pregnancy leave at the same time. But the remark did not reflect a negative attitude toward pregnancy generally and in no way forecast how the employer would deal with the adverse situation if it arose. A statement that refers to a protected status without reflecting bias is not direct evidence of discrimination. Deneen v. Nw. Airlines, Inc., 132 F.3d 431, 436 (8th Cir. 1998). As there is no other evidence linking this comment to the job performance actions taken more than one month later, we agree with the district court that Deanne Zogg's comment, in context, was a "stray remark in the workplace." Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999).

A Title VII plaintiff may also avoid summary judgment by producing "sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm." Griffith, 387 F.3d at 736. Under McDonnell Douglas, plaintiff must establish a prima facie case. Fjelsta argues she did so but fails to correctly identify the applicable elements of her prima facie case. This is a wrongful termination case (with termination being a disputed issue of fact):

> *McDonnell Douglas* teaches that the plaintiff in a discharge case may satisfy [her] prima facie case burden by showing (i) that [she] belongs to a protected class; (ii) that [she] was qualified for the job; (iii) that [she] was discharged; and (iv) that, after [her] discharge, [she] was replaced

by a person with similar qualifications. Absent a showing that plaintiff was replaced, [she] may still meet [her] flexible prima facie case burden . . . . In reduction-of-force cases, we . . . require[] "some additional showing" that discrimination was a factor in the termination.

Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003). Here, Deanne Zogg testified that, some weeks after Fjelsta did not return to work, the clinic hired a female licensed professional nurse. As Fjelsta produced no evidence regarding this person's qualifications, we agree with the district court that Fjelsta did not satisfy her prima facie case burden because the circumstances surrounding her alleged termination do not give rise to an inference of discrimination.

**C. Defamation.** Fjelsta next argues that the district court erred in dismissing her defamation claim. Under Minnesota law, a defamation plaintiff must prove that the defendant made a false and defamatory statement about the plaintiff to a third party in an unprivileged context, and that the statement harmed the plaintiff's reputation in the community. See Weinberger v. Maplewood Review, 668 N.W.2d 667, 673 (Minn. 2003). Here, Deanne Zogg testified that, after Dr. Zogg escorted Fjelsta from the clinic on August 11, Deanne convened a staff meeting and explained that Fjelsta had been sent home because "we had concern with her job performance and patient safety with respect to her job performance." Fjelsta also submitted an affidavit by clinic receptionist Rhonda Christianson averring that Deanne Zogg said "something about Tanya not working here as long as she refused to do her job and something about endangering patients."

The district court dismissed this claim on the ground "there is no evidence in the record that Defendants made defamatory statements about Fjelsta." The issue is not, as defendants suggest, whether Christianson's affidavit lacked sufficient specificity. Deanne Zogg's testimony confirmed that her explanation to the staff linked concern about Fjelsta's job performance with patient safety; comments accusing a nurse of endangering patient safety would clearly tend to harm her

-7-

reputation in the community. Rather, the issue is whether Deanne Zogg's statements can be reasonably interpreted, in the context within which they were made, as setting forth or implying a damaging, "provably false statement of fact." McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 853 (8th Cir. 2000) (quotation omitted); see Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990) (a statement of opinion or belief may be actionable as defamation if, taken in context, "the statement may still imply a false assertion of fact").

Saying that Fjelsta had endangered a patient's safety would be a statement of fact that could be proved either true or false. But Deanne Zogg did not make such a statement. She simply said that Fjelsta was sent home because the clinic had job performance concerns related to patient safety. Fjelsta readily admits that she and the clinic were at odds over issues of patient safety. In fact, Fjelsta memorialized one dispute in her own writings. Deanne Zogg's statement, then, was facially true in that the clinic had job performance concerns related to patient safety. As such, it can only be actionable as defamation if it falsely implied that Fjelsta endangered patient safety.

Here, we conclude the statement cannot reasonably be interpreted as falsely claiming or implying that Fjelsta endangered patient safety. Geraci v. Eckankar, 526 N.W.2d 391, 397 (Minn. App.) ("Whether a statement can be interpreted as stating facts or can be proven false is a question of law."), cert. denied, 516 U.S. 818 (1995). Christianson's affidavit was too vague to support an inference that Deanne Zogg had accused Fjelsta of endangering patient safety, and Deanne Zogg's deposition testimony described only circumstances that Fjelsta herself admits -- the clinic and Fjelsta had serious disagreements as to issues of patient safety. Identifying safety as an area of concern with an employee's performance does not necessarily imply that the employee actually acted in an unsafe manner. In this context, then, we conclude that there was no provably false statement of fact as needed to support a defamation claim. Hunt v. Univ. of Minn., 465, N.W.2d 88, 94 (Minn. App. 1991) ("Whether a remark can be reasonably interpreted as stating actual facts must be inferred from the

political, literary, and social context in which the statement was made.").  In these circumstances, summary judgment was proper.

**D. Battery.**  Finally, Fjelsta argues that the district court erred when it dismissed her battery claim on the grounds (i) that the Minnesota Workers Compensation Act applies because Brian Zogg's alleged battery occurred during the course of Fjelsta's employment, and (ii) that the assault exception to Workers Compensation Act exclusivity does not apply because Fjelsta submitted no evidence that Brian Zogg's action was motivated by personal animosity.  See Minn. Stat. §§ 176.011, subd. 16, 176.031; McGowan v. Our Savior's Lutheran Church, 527 N.W.2d 830, 834 (Minn. 1995).  After careful review of the record and these authorities, we agree with the district court's decision.

The judgment of the district court is affirmed.

_____