# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2937
_____

Douglas James Sellner

*Plaintiff - Appellant*

v.

MAT Holdings, Inc.; Midwest Air Technologies, Inc.; MAT Industries LLC;
Sanborn Manufacturing Company

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: January 10, 2017
Filed: June 15, 2017
_____

Before RILEY, Chief Judge[1], WOLLMAN and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

Douglas J. Sellner sued his former employer, MAT Holdings and its subsidiaries Midwest Air Technologies, Inc., MAT Industries, and Sanborn Manufacturing Company (collectively "MAT"). He alleges retaliation under the Minnesota Whistleblower Act, Minn. Stat. § 181.932. The district court granted summary judgment to MAT. Having jurisdiction under 28 U.S.C. 1291, this court reverses and remands.

I.

MAT manufactures and markets air compressors, pneumatic air tools, and pressure washers—all sold at retailers and home centers. In June 2011, MAT hired Sellner as a lab-quality technician at its facility in Springfield, Minnesota. His primary responsibility was to conduct lab testing and report the results to supervisors. Travis W. Strong, the Quality Assurance and Product Service Manager, was Sellner's direct supervisor. Alan D. ("Butch") Stark is the facility's general manager.

On Sellner's first day, Strong told him that one of MAT's products, the Honbase pump, had serious problems with oil leakage during testing. In August 2011, MAT began working with the retailer Sears to add a compressor with the Honbase pump to Sears' Craftsman product line. Later that month, Sellner was assigned to complete testing whether certain changes to the Honbase pump improved oil consumption and life performance.

On March 29, 2012, Sellner alleges Stark told him to "get together everything [they] had on the [Honbase] pump." Sellner gathered and delivered the data to Stark. According to Sellner, later that day Engineering Lab Manager Joel D. Schiller said that the results Sellner compiled were "sh*t" and could not be used in any report for Sears.

Sellner claims that within hours, Stark entered his office and said Sears called MAT "on the carpet" for overstating the performance and quality of the Honbase

-2-

pump.  Stark then allegedly told Sellner to produce a report showing no major issues with the Honbase pump.  Sellner says that when he told Stark that no units performed without major issues, Stark said, "well, if you don't do this, we're all going to be on the street—no, you're going to be on the street."  Sellner states that when he told Stark that he would not falsify any testing data and that his request was illegal, Stark said he should "get creative with [his] documentation."  In his testimony, Joshua Beach, a lab technician, swears he overheard these parts of the conversation:  Stark saying that Sears was calling MAT "on the carpet," Stark encouraging Sellner to get creative with testing, and Sellner refusing.  Beach says that after the conversation with Stark, Sellner said, "Well, there's my job."  According to Sellner, Stark continued to return to his office throughout the day, pressuring him to complete a report with falsified data.

Sellner testified that throughout the next day, March 30, Stark continued to pressure him, and Sellner continued to  refuse.  Later that day, Sellner called the Minnesota Department of Labor and Industry (MNOSHA).  He reported he was instructed to "doctor up some documentation."  He also filled out an online form.  Beach swears that "a day or two" later, he told Strong about Sellner's report to MNOSHA.

On March 30, MAT posted a job opening for a Quality Assurance/Test Lab Leadperson.  Strong recommended Sellner for the promotion; Stark approved.  Sellner learned of his promotion on April 3, just before he and Strong left for China on business.  On April 10, while Sellner was in China, Janis Nebel, the corporate Director of Human Resources at MAT, received an anonymous email accusing Sellner of inappropriate conduct.  On April 16, Sellner returned from China.  Strong recommended an above-standard pay increase along with the promotion, saying that Sellner "brought vast intellectual knowledge and experience across all facets."  Strong and Stark signed the paperwork proposing the pay increase.

Nebel investigated, on-site, personnel issues at the Springfield facility from April 23 through 25. Several employees met with Nebel and made allegations about Sellner's workplace behavior. Sellner says that he told Nebel he was asked to "fudge test results out of the lab when the units were failing to save the Sears contract." The next day, Sellner was terminated. He never received the pay increase or the promotion. MAT maintains it fired Sellner for "unacceptable conduct" including "inappropriate and offensive statements made to and about his colleagues, and inability to maintain positive and productive relationships with his co-workers, and engaging in conduct that adversely affected the productivity of the workplace."

Sellner sued MAT for wrongful termination under the Minnesota Whistleblower Act (MWA), Minn. Stat. § 181.932. The district court granted MAT summary judgment on the MWA claim. Sellner also brought five other claims, which the district court dismissed and Sellner does not appeal. He appeals the dismissal of his MWA claim.

II.

This court reviews de novo the district court's grant of summary judgment, considering the facts most favorably to Sellner. *See AuBuchon v. Geithner*, 743 F.3d 638, 641 (8th Cir. 2014).

To recover under the MWA, Sellner must prove that MAT "took adverse employment action against [him] because []he engaged in statutorily protected conduct, here, making a good faith report of a suspected violation of law." *Fjelsta v. Zogg Dermatology*, 488 F.3d 804, 808 (8th Cir. 2007). An employee alleging retaliation need not show that the alleged conduct was actually unlawful, only that the employee "in good faith, reported a violation or suspected violation of law to an employer." *See Pedersen v. Bio-Medical Applications*, 775 F.3d 1049, 1053 (8th Cir. 2015) (interpreting the MWA). Falsifying test data is a state-law violation;

-4-

reporting it is protected conduct under the MWA. *See* **Minn. Stat. § 325D.44**; **Minn. Stat. § 181.932**. Termination is an adverse employment action. ***Wagner v. Campbell***, 779 F.3d 761, 766 (8th Cir. 2015). The issue is the causal connection between Sellner's protected conduct and his firing.

Retaliation claims under the MWA may be proven by direct evidence, or in its absence, under the *McDonnell Douglas* burden-shifting structure. ***Wood v. SatCom Mktg., LLC***, 705 F.3d 823, 828 (8th Cir. 2013). Direct evidence is "evidence of a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." ***Id.*** (internal citation omitted). Direct evidence "includ[es] evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude." ***Thomas v. Heartland Emp't Servs. LLC***, 797 F.3d 527, 529-30 (8th Cir. 2015) (internal quotations omitted). "Direct" refers to the causal strength of the proof, not whether it is circumstantial evidence. ***Young-Losee v. Graphic Packaging Int'l, Inc.***, 631 F.3d 909, 912 (8th Cir. 2011). Direct evidence should "reflect a negative attitude toward [protected conduct] and . . . forecast how the employer would deal with the adverse situation if it arose." ***Fjelsta***, 488 F.3d at 810.

Sellner argues that Stark's March 29 comment—"we're all going to be on the street—no, you're going to be on the street" if Sellner did not "get creative with [his] documentation"—is direct evidence of retaliation. MAT acknowledges that Stark is a person "involved in the decision-making process." *See **Thomas***, 797 F.3d at 529-30. The issue is whether Stark's comment adduces a "specific link between the alleged discriminatory animus and the challenged decision." *See **id.*** Taking all inferences for Sellner, Stark's remark that Sellner would "be on the street" forecasted how MAT would deal with Sellner's refusal to "get creative with [his]

documentation." *See **Fjelsta***, 488 F.3d at 810. Stark's comment provides a specific link between Sellner's protected conduct and his termination.

MAT asserts there is insufficient evidence of a causal link between the alleged comment and Sellner's firing. MAT and the district court cite both *Young-Losee* and *Fjelsta* to conclude that Stark's March 29 comment is "too remote in time" from Sellner's April 26 firing to be direct evidence. Neither *Young-Losee* nor *Fjelsta* set a specific time period on the viability of direct evidence. *See **Young-Losee***, 631 F.3d at 912-13; ***Fjelsta***, 488 F.3d at 810. In *Fjelsta*, the alleged direct evidence "did not reflect a negative attitude toward [the protected characteristic] generally and in no way forecast how the employer would deal with the situation if it arose." ***Fjelsta***, 488 F.3d at 810. "[A]t summary judgment, a plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events." ***Wilson v. Arkansas Dep't of Human Servs.***, 850 F.3d 368, 373 (8th Cir. 2017), *citing **Turner v. Gonzales***, 421 F.3d 688, 696-97 (8th Cir. 2005). A time period of six weeks between the protected activity and adverse action can support an inference of retaliation that survives summary judgment. *See **Chavez-Lavagnino v. Motivation Educ. Training, Inc.***, 767 F.3d 744, 750 (8th Cir. 2014) (six weeks between employee's protected conduct and termination supports causal inference of retaliation); ***Bennett v. Riceland Foods, Inc.***, 721 F.3d 546, 552 (8th Cir. 2013) (same). *Cf.* ***Clark Cty. Sch. Dist. v. Breeden***, 532 U.S. 268, 273-74 (2001) (per curiam) (citing cases where three-month and four-month periods are insufficient evidence of causality). Here, the 27-day gap between Sellner's report to MNOSHA—which Strong allegedly knew about within "one or two days"— and his firing creates an inference of retaliation at summary judgment. Stark's discriminatory comment came one day before Sellner's report to MNOSHA and is not too remote in time to be direct evidence.

MAT believes that intervening events between Stark's comment and Sellner's firing destroy the "specific link" needed for direct evidence. MAT cites *Pedersen* as

a case where intervening events destroyed the specific link. *See **Pedersen***, 775 F.3d at 1054. There, the intervening events were the employer's "decision to return Pedersen to work on a corrective action plan, promises to retrain Pedersen to her previous position with [the employer], and Pedersen's continued failure to return to work despite [the employer's] efforts." *See **Pedersen***, 775 F.3d at 1054. Because MAT took none of these actions, *Pedersen* does not apply.

MAT also claims that Stark's "support [of] employment decisions beneficial to Sellner" after March 29 destroys the specific link. However, Stark's support of Sellner's employment can be the foundation of an inference that MAT's explanation for his firing has "no basis in fact or was not actually important to [MAT]." *See **Smith v. Allen Health Sys.***, 302 F.3d 827, 834 (8th Cir. 2002) ("Recent favorable reviews are often used as evidence that the employer's proffered explanation for the adverse action had no basis in fact or was not actually important to the employer."); ***Stallings v. Hussmann Corp.***, 447 F.3d 1041, 1052 (8th Cir. 2006) (explaining that an employee receiving a favorable review shortly before termination supports a finding of retaliation).

MAT asserts that it fired Sellner for "unacceptable conduct" in the workplace. This court does not discuss the merits of MAT's claim because "[e]vidence of the employer's motives for the action, and whether the presence of a mixed motives defeats the plaintiff's claim, is a trial issue, not intended for summary judgment." *See **Kratzer v. Rockwell Collins, Inc.***, 398 F.3d 1040, 1046 (8th Cir. 2005). This court holds only that Stark's comment—viewed most favorably to Sellner—is "sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *See **Wood***, 705 F.3d at 828.

## III.

The MAT defendants contend that some of them are not proper parties. Because the district court did not rule on this fact-intensive issue, this court leaves it

for remand.  *See* **Singleton v. Wulff**, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); **Annex Med., Inc. v. Burwell**, 769 F.3d 578, 583 (8th Cir. 2014) (remanding for the "district court to use its superior fact-finding abilities to determine, in the first instance, whether subject matter jurisdiction exists"); **Peske v. Tangedahl**, 619 F.2d 729, 731 (8th Cir. 1980) (per curiam) (expressing doubts as to jurisdiction but remanding in light of the district court's failure to consider the issue).

* * * * * * *

The judgment of the district court is reversed, and the MWA claim is remanded.

_____