George **DUNCAN**, Appellant,

v̇.

Thomas **CLEMENTS**, Parole Officer, Missouri State Board of Probation & Parole, St. Louis, Missouri and Police Officer Scharfer, St. Louis Police Department, St. Louis, Missouri identified as: Robert Schaeffer, Police Officer Badge No. 7899, St. Louis Police Department, City of St. Louis, Missouri, Appellees.

George **DUNCAN**, Appellant,

v.

Robert **SCHAEFFER** and Thomas Clements, Appellees.

No. 83–2502.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1984.

Decided Sept. 17, 1984.

---

John Ashcroft, Atty. Gen., R. Brooks Pitchie, Asst. Atty. Gen., Jefferson City, Mo., for appellee Thomas Clements.

James J. Wilson, City Counselor, Edward J. Hanlon, Stephen J. Kovac, Asst. City Counselors, St. Louis, Mo., for appellee Robert Schaeffer.

Martin A. Stewart, St. Louis, Mo., for appellant.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

George Duncan appeals from a final judgment entered by the District Court[1] upon a jury verdict against him in his action under 42 U.S.C. § 1983. Duncan seeks actual and punitive damages arising out of alleged violations of his civil rights by Thomas Clements, a parole officer with the Missouri Board of Probation and Parole, and Robert Schaeffer, an officer with the

1. The Honorable William L. Hungate, United States District Judge, Eastern District of Missouri.

St. Louis Police Department. Duncan's claims include a pendent state claim against Schaeffer for false arrest or imprisonment. For reversal, Duncan argues that the District Court erred in (1) refusing to give collateral estoppel effect to a state court finding that the arrest and search of Duncan and the seizure of items from him on December 11, 1980 were unconstitutional; (2) instructing the jury that good faith was a defense to a claim for false arrest; and (3) making various evidentiary rulings. We affirm.

Duncan's civil rights suit arises out of several events which occurred subsequent to his release on parole from the Missouri Penitentiary for Men on June 12, 1979. In count one of his amended complaint, he alleges that Schaeffer harassed and intimidated him by subjecting him to unwarranted automobile stops and by asking him to become a police informant and to help Schaeffer sell illegal drugs. According to Duncan, Schaeffer told Duncan that he would "be sorry" if he did not assist Schaeffer.

Duncan's second count charges Schaeffer with unconstitutionally arresting, searching, and seizing Duncan and his property on December 11, 1980. The third count alleges that this arrest, search, and seizure also constituted a violation of Missouri tort law. Duncan further contends, in count four, that Schaeffer filed a false police report and gave false testimony regarding the December 11 incident.

Count five alleges that Clements violated Duncan's rights by harassing him, by threatening him with parole revocation, by having Duncan improperly detained, by refusing to speak to witnesses on Duncan's behalf after the December 11 incident, and by preparing false parole reports. Finally, in count 6, Duncan alleges that Schaeffer and Clements conspired together to violate Duncan's rights.

At the close of Duncan's evidence at trial, the District Court granted Schaeffer's and Clements' motions for directed verdict on count six. The remaining five counts were submitted to the jury which found in favor of Schaeffer and Clements.

As might be expected, there was conflicting trial testimony about the events that occurred on December 11. There also were inconsistencies among the witnesses on each side. Schaeffer testified that an informant, Eugene Cass, told him that Duncan would sell Cass a rifle that had been used in a multiple homicide on the evening of December 11. Schaeffer and other officers kept Cass's and Duncan's cars under surveillance as the two made various stops. Schaeffer and another officer testified that they saw Duncan bring what appeared to be a shotgun or rifle to Cass's car. After receiving a radio communication that Cass had called the police department, the officers stopped both cars. Schaeffer testified that as he ran toward Duncan's car, he saw Duncan draw a revolver from his waistband and hand it to a passenger, Cora Bozeman (also known as Cora Duncan). A second police officer took the gun from her. Four rounds of ammunition for the revolver were found in a search incident to the arrest. Police officers also obtained a rifle and a rifle case from Cass's car. Riding in Duncan's car was Earl Glenn Finger, another parolee.

Duncan contends that Schaeffer fabricated much of his testimony. Duncan testified that he never had possession of the rifle and, in support of his case, points to the fact that a rifle case was found in Cass's car and that Schaeffer and his partner never saw Duncan carrying a rifle case. Duncan also testified that the revolver belonged to Cora Bozeman.

Both Schaeffer and Clements denied that they had any contact prior to December 12, the day after Duncan's arrest. After the pretrial release office informed Clements on December 12 that Duncan had been arrested, Clements conducted an investigation and filed a parole violation report recommending revocation of parole. This report stated that Duncan was suspected of violating four parole conditions, including: (1) a parolee must obey all laws; (2) a parolee must notify the parole officer of

changes in residence within forty-eight hours; (3) a parolee will not associate with other convicted felons; and (4) a parolee will not own, possess, purchase, receive, sell or transport any firearms or ammunition. Clements filed a parole violation detainer warrant on December 12 making Duncan ineligible for bond. A preliminary parole revocation hearing and a subsequent parole revocation hearing occurred with results adverse to Duncan.

## I. Collateral Estoppel

Duncan seeks to foreclose Schaeffer from relitigating the constitutionality of the December 11, 1980 arrest and search of Duncan and seizure of items from him. Early in 1981, the State of Missouri instituted criminal proceedings against Duncan for carrying a concealed weapon. The state circuit court ruled in favor of Duncan on his motion to suppress.[2] Subsequently, the prosecuting attorney entered a memorandum of *nolle prosequi* in the case because the essential evidence had been suppressed.

■ The doctrine of collateral estoppel may be applied in a § 1983 suit to preclude relitigation of a federal constitutional issue decided in state criminal proceedings. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Thus far, the doctrine has been used defensively to preclude plaintiffs from relitigating fourth and fifth amendment issues decided in state criminal proceedings. *See, e.g., Baker v. McCoy*, 739 F.2d 381 (8th Cir.1984); *Boyer v. Riley*, No. 84–1070 (8th Cir. July 19, 1984); *Sanders v. Frisby*, 736 F.2d 1230 (8th Cir.1984). Duncan seeks to use the doctrine offensively against Schaeffer.

■ The initial question is whether Missouri rules of collateral estoppel would bar relitigation of Duncan's fourth amendment claim in a subsequent civil proceeding. *See generally* 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 4474 (1981). If they do bar relitigation, then the federal full faith and credit statute, 28 U.S.C. § 1738, requires us to give preclusive effect to the state court judgment. *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 2373–74, 76 L.Ed.2d 595 (1983); *Sanders, supra.* The factors to be considered in determining whether collateral estoppel is appropriate include: (1) was the issue decided in the prior adjudication identical to the issue in the present action; (2) did the prior adjudication result in a judgment on the merits; (3) was the party against whom collateral estoppel is asserted a party or in privity with a party to the prior adjudication; and (4) did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate the issue in the prior suit. *Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo.1984) (*en banc*); *Oates v. Safeco Insurance Co. of America*, 583 S.W.2d 713, 719 (Mo.1979) (*en banc*).

■ Duncan argues that Schaeffer should be estopped because he was "virtually represented" by the State of Missouri at the state suppression hearing and because he fully and fairly litigated the constitutional issue by testifying at that hearing. We hold that collateral estoppel is not appropriate in this case because Schaeffer, the party against whom collateral estoppel is asserted, was neither a party nor in privity with a party to the prior state criminal proceeding.[3] *See McCurry v. Allen*,

---

2. Duncan objects to the District Court's failure to instruct the jury as to the suppression hearing findings. The instruction was necessary, according to Duncan, in order to give collateral estoppel effect to the state court finding and to explain the state court proceedings so the jury could use the evidence relating to them in an intelligent manner in its deliberations. We find no error in the District Court's refusal to instruct.

3. The District Court concluded that there was no identity of issues because Schaeffer's intentions with regard to the arrest, search, and seizure were not litigated in the state proceedings and that there was no identity of parties. We agree with the latter conclusion but not the former. The District Court apparently confused the issue of the unconstitutionality of the arrest, search, and seizure with the issue of Schaeffer's good faith, a defense to liability for an unconstitutional act. *See Pierson v. Ray*, 386 U.S. 547,

688 F.2d 581, 587 (8th Cir.1982). Likewise, we do not believe Schaeffer had a full and fair opportunity to litigate the issue in the state criminal proceedings.

The State of Missouri, not Schaeffer, was a party to Duncan's criminal prosecution. We therefore would have to find that Schaeffer was in privity with the State of Missouri in order to estop Schaeffer from relitigating the constitutional issue. Although Missouri courts have not addressed the precise problem confronting us, they have noted that privity does not exist merely because a person "happen[s] to be interested in the same question, or in proving or disproving the same state of facts." *American Polled Hereford Association v. Kansas City*, 626 S.W.2d 237, 241 (Mo. 1982). It is not enough that both the state and Schaeffer were interested in proving that probable cause existed to make the arrest and conduct the search and seizure.

"[P]rivity within the meaning of the doctrine of issue preclusion is privity as it exists in relation to an identity of interests in the subject matter of the litigation." *Id.* The interests of the State of Missouri in a criminal proceeding are not identical to those of an individual officer such as Schaeffer. In a different context, the Supreme Court noted: " '[T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant.' " *United States v. Standefer*, 447 U.S. 10, 25, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980) (quoting *United States v. Standefer*, 610 F.2d 1076, 1093 (3rd Cir.1979) (defendant accused of aiding and abetting in commission of criminal offense may be convicted despite the prior acquittal of the alleged perpetrator)). Only the State of Missouri, not Schaeffer, had an interest in the outcome of the criminal proceeding against Duncan; Schaeffer's personal interests were not at stake.[4]

Moreover, Schaeffer clearly had no control over nor did he substantially participate in control of the state's presentation of its case. *See* Restatement (Second) of Judgments § 39 (1982); *Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir.), *cert. denied*, 404 U.S. 843, 92 S.Ct. 139, 30 L.Ed.2d 78 (1971). Duncan asserts, for example, that Schaeffer "was represented by a state prosecutor throughout the hearing ...." Brief for appellant at 10. That assertion is not supported by the facts. The prosecutor represented the State of Missouri—not Schaeffer. Schaeffer had no control over the prosecutor and did not make decisions with regard to the prosecution. Schaeffer's role at the suppression hearing was simply that of a witness for the prosecution. He could not have appealed the state court's decision on the motion to suppress and he had no control over the prosecutor's decision to enter a *nolle prosequi* on the criminal charge. We hold, therefore, that Schaeffer did not have a full and fair opportunity to litigate at the suppression hearing the con-

557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Rollins v. Farmer*, 731 F.2d 533 (8th Cir.1984).

4. Duncan relies on *Varnal v. Kansas City*, 481 S.W.2d 575 (Mo.Ct.App.1972) for the proposition that under Missouri law governmental bodies and their officers are in privity for purposes of collateral estoppel. The issue presented in *Varnal* was whether the defendant city was bound in a state court action by a previous federal court judgment against the city's employee. Both civil actions arose out of the same "common nucleus of operative fact." *Id.* at 578. The court held that the municipal corporation was bound by the judgment against the employee because the municipal corporation was in privity with the employee. It reasoned that " '[a] judgment for or against a public officer, in an action brought by or against him in his official capacity, is conclusive on the municipal corporation which he represents ....' " *Id.* at 579. Thus, *Varnal* simply involved the relationship between a governmental body and its employees with regard to civil liability arising from actions of the employee. The present case presents an entirely different issue of the relationship between the State of Missouri, acting in the public interest in a criminal proceeding, and a city police officer who is also an officer for the state. Moreover, there is no indication in the pleadings or the record that Duncan was suing Schaeffer in his official capacity either as an officer of the city or, under a more tenuous theory, as an officer of the state. *See Rollins*, 731 F.2d 533, 535.

stitutionality of the December 11, 1980 arrest and search of Duncan and seizure of items from him.

## II. False Arrest or Imprisonment

Duncan also argues that the District Court erred in submitting Instruction No. 18A because it gave Schaeffer a "good faith" defense to the Missouri false arrest count, a defense not recognized by Missouri courts. Instruction No. 18A stated:

> [I]f the defendant Schaeffer reasonably believed that plaintiff had committed or was committing the crime for which he was charged and defendant Schaeffer acted in good faith on the basis of this belief, then his reasonable belief and good faith action would constitute a defense as to any count wherein defendant Schaeffer acted in good faith.

Designated Record at 56.

We agree with Duncan that the Missouri courts do not recognize a good faith defense to a claim for false arrest or imprisonment. A police officer may defend, however, by establishing that there were reasonable grounds or probable cause to believe that the person arrested had committed a crime. *See, e.g., Bergel v. Kassebaum*, 577 S.W.2d 863, 868–69 (Mo. Ct.App.1978). The instruction clearly required the jury to find that Schaeffer had a reasonable belief that a crime was being committed. Good faith was not offered as an alternative defense; it was interposed merely as an additional element on the probable cause determination. In these circumstances, giving this instruction was harmless error.

We have considered the other arguments raised by Duncan and find them to be without merit. Accordingly, the judgment of the District Court is affirmed.