[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12141
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 24, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-00188-CV-CAR-5

EDWARD STALEY,

Plaintiff-Appellant,

versus

BRIAN OWENS,
Commissioner, G.D.C.,
FREDRICK HEAD,
Warden, Autry State Prison,
JANE DOE,
Sgt., Autry State Prison, 1st Shift,
JANE DOE, II,
Autry State Prison, 2nd Shift,
LATOYA KING,
Control Room Officer,

Defendants-Appellees,

RAYMOND HEAD,
Manager of Inmate Affairs Unit, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(February 24, 2010)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Edward Staley, a Georgia prisoner proceeding pro se, appeals the district court's grant of summary in favor of defendants Fredrick Head, warden of Autry State Prison, James E. Donald, Commissioner for Georgia Department of Corrections, and Latoya King, a correctional officer at Autry State Prison, in his 42 U.S.C. § 1983 action, alleging that the defendants were deliberately indifferent to a substantial risk of harm to him from another inmate, in violation of the Eighth Amendment. On appeal, Staley first argues that the district court abused its discretion by construing a letter sent to the defendants as new discovery, rather than a Fed. R. Civ. P. 37 discovery dispute letter. Second, Staley argues that the district court erred in treating Defendants Donald and Head as movants for summary judgment. Third, Staley argues that the district court abused its discretion in allowing Defendant King to file a motion for summary judgment out of time. Finally, Staley argues that the district court erred by granting summary

judgment to the defendants because there was a genuine issue of material fact, and the district court failed to consider the record.

## I. Discovery

Staley argues that the magistrate judge erred by construing his discovery letter as new discovery, rather than a Fed. R. Civ. P. 37 discovery dispute letter.

We review a district court's discovery decisions for abuse of discretion. Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003). "This means that a district court is allowed a range of choice in such matters, and we will not second-guess the district court's actions unless they reflect a clear error of judgment." Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006) (quotation marks omitted). Furthermore, we will not overturn a discovery ruling unless the appellant demonstrates that it resulted in substantial harm to his case. Iraola & CIA, 325 F.3d at 1286.

It was not error to construe Staley's letter as a request for new discovery. Although his intent may have been to clarify his previous requests, that was not the operative effect of the actual requests in his letter. Defendants properly responded or objected to Staley's first set of interrogatories. The operative effect of Staley's letter was to place requests before the defendants that were clearly beyond the

scope of his initial interrogatories. More importantly, Staley has not demonstrated that the ruling resulted in substantial harm to his case. There is no indication that had his letter been treated as a discovery dispute letter instead of a request for new discovery he would now be in possession of information that would affect the summary judgment ruling in this case. Because Staley has failed to show the magistrate court's construction of the letter was clearly erroneous or that the court's discovery decision resulted in substantial harm to his case, he has failed to demonstrate an abuse of discretion.[1]

## II. Proper Movants for Summary Judgment

Staley next argues that the district court erred by finding that Defendants Donald and Head were movants for summary judgment because their counseled motion stated that "Defendants Hall, Perry, and Lace move this Court to grant summary judgment in their favor."

Staley has failed to demonstrate that the typographical error in one portion

---

[1] Staley also claims (1) that the magistrate judge violated Fed. R. Civ. P. 72(a) by treating his objection to the ruling as a motion for reconsideration instead of an objection to be heard before the district court and (2) the district court misapplied that same rule by not initially ruling on his objection. Defendants concede that the pursuant to Fed. R. Civ. P. 72(a), Staley's objection should have been referred to and ruled on by the district court. However, any technical misstep does not alter our ultimate disposition of the issue. In response to a motion for reconsideration, the district court ultimately found that Staley was due no relief under Fed. R. Civ. P. 72(a) because the magistrate judge's decision was not clearly erroneous, the proper standard under Rule 72(a).

of the defendants' motion for summary judgment otherwise harmed his case. Although one sentence in the body of the motion referred to Defendants Hall, Perry, and Lacy, the motion was entitled "Defendants Donald and Head's Motion for Summary Judgment." Moreover, the defendants supported their motion with filings entitled "Defendants Donald and Head's Statement of Facts as to which There Is no Genuine Issue to be Tried" and "Defendants Donald and Head's Memorandum of Law in Support of Motion for Summary Judgment." Finally, the magistrate judge issued an order entitled "Order Directing Response to Motion for Summary Judgment," in which he notified Staley that defendants Donald and Head had filed a motion seeking summary judgment. Staley was clearly notified of the proper movants and his later filings demonstrate that he understood that he was responding to a motion on behalf of Defendants Donald and Head. Because Staley has failed to show that he was harmed by the typographical error in the defendants' motion for summary judgment, he has failed to show that the district court erred in finding Defendants Donald and Head to be movants for summary judgment.

### III. Out-of-Time Motion for Summary Judgment

Staley next argues that the district court committed reversible error by granting Defendant King's motion for leave to file an out-of-time motion for

summary judgment because King did not show "excusable neglect," as required under Fed. R. Civ. P. 6(b)(2).[2]

Rule 6(b)(1)of the Federal Rules of Civil Procedure provides that, when a party files a motion after the time for doing so expires, a court may, for good cause, extend the time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The term "excusable neglect" appears in a number of procedural rules. The Supreme Court has identified four factors to guide courts in determining whether excusable neglect has occurred: "'the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Walter v. Blue Cross & Blue Shield United of Wis., 181 F.3d 1198, 1201 (11th Cir. 1999) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993)). "In Pioneer, the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration in determining whether the district court had abused its discretion." Cheney v. Anchor Glass Container Corp.,

_____

[2] Appellant's brief refers to Fed. R. Civ. P. 6(b)(2). Rule 6(b)(2) states that the a court cannot extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b). None of those rules are implicated in this case. However, appellant's continued references to "excusable neglect" indicate that he intended to invoke the requirements of Rule 6(b)(1)(B).

71 F.3d 848, 850 (11th Cir. 1996). We have held that a district court may consider an untimely motion for summary judgment if doing so is in the interest of judicial economy. See Thomas v. Kroger Co., 24 F.3d 147, 149 (11th Cir. 1994) (affirming district court's decision to consider motion for summary judgment filed 24 days after the filing deadline).

Staley has not demonstrated that the decision to allow King to file her motion for summary judgment after the deadline had passed was an abuse of discretion. First, Staley has failed to demonstrate that he suffered any prejudice or harm. In fact, the magistrate judge granted Staley additional time to respond to the motion. Second, the length of the delay was relatively short. The initial filing deadline was June 2, 2008. King filed her motion June 20, 2008, a delay of less than 3 weeks. Third, as noted by the magistrate judge's order, allowing the out-of-time motion was in the interest of the judicial economy. Finally, Staley has failed to demonstrate that King was not acting in good faith. Given that Staley has not suffered any prejudice from the out-of-time filing, King proceeded in good faith, and allowing the out-of-time filing is in the interest of efficient judicial administration, it was not an abuse of discretion to permit King to file her summary judgment motion after the deadline had passed.

IV. Summary Judgment

Staley argues that the district court erred in determining that he had not demonstrated a substantial risk of harm because he had not notified the defendants in advance of his fear of Inmate Brown—the inmate who assaulted him. He asserts specifically that Defendant King showed deliberate indifference by: (1) allowing the floor officer to leave the cell block, which was a violation of written policy and resulted in the cell block being unsupervised at the time of the assault; (2) taking no action for the three to four minutes during which Staley was spit on by Inmate Brown and was calling for help; and (3) failing to stop the physical assault by Inmate Brown. He asserts that Defendant Head showed deliberate indifference by: (1) having knowledge of the widespread thefts and assaults at the prison, but failing to do anything to stop them; and (2) failing to transfer Staley to a different prison after the assault, but rather, placing Staley back in general population, which resulted in him being robbed and threatened. He asserts that Defendant Donald failed to classify and segregate prisoners properly based on age and "incorrigibility," in violation of O.C.G.A. § 42-5-52(a), thus resulting in an inmate like Brown being housed with an inmate like Staley. Staley also argues that the court committed reversible error in granting summary judgment because the court plagiarized the defendants' statement of facts, failed to consider and review the

8

record, and failed to draw factual inferences in Staley's favor.

We review pro se pleadings liberally, holding them to a less stringent standard than those drafted by attorneys. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). We review de novo the district court's grant of summary judgment, applying the same standard as the district court and viewing all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1276-77 (11th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, the moving party must first "identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotation marks and alterations omitted). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party to come forward with specific

facts showing that there is a genuine issue for trial. Id. at 1116. "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). This Court may affirm the district court's decision on any ground supported by the record. Parks v. City of Warner Robins, Ga., 43 F.3d 609, 613 (11th Cir. 1995).

In Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974 (1994), the Supreme Court held that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id. at 833, 114 S. Ct. at 1976 (quotation marks and alterations omitted). A constitutional violation occurs "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) (quotation marks and alteration omitted). In order to prove a claim of deliberate indifference in violation of the Eighth Amendment, the plaintiff must show that: (1) there was substantial risk of serious harm (the objective component); (2) the defendants acted with deliberate indifference to that risk (the subjective component); and (3) the defendants' wrongful conduct caused

10

the injury.  See Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003).  A substantial risk to a prisoner's safety may arise not only out of his individual situation, but out of an environment of longstanding and pervasive attacks to which all prisoners in his situation are exposed, and it may come from single or multiple sources.  See Farmer, 511 U.S. at 842-43, 114 S. Ct. at 1981-82.  Nevertheless, a defendant may avoid liability by showing that: (1) he was unaware of the underlying facts indicating a substantial risk; (2) he "believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) he "responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844, 114 S. Ct. at 1982-83.

In Carter, we affirmed the district court's grant of summary judgment for defendants where the plaintiff, who suffered an attack by a cellmate, established that the defendants knew his cellmate was a "problem inmate" with a well-documented history of prison disobedience and was prone to violence.  352 F.3d at 1349.  We noted that the plaintiff had not indicated that the cellmate had made a clear threat or that he was afraid of the cellmate, and we held that a defendant's "mere awareness of [an inmate's] generally problematic nature" does not amount to knowledge of a substantial risk.  Id. at 1349-50.  "The known risk of injury must be a strong likelihood, rather than a mere possibility[,] before a guard's

11

failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotation marks omitted).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotation marks omitted). Supervisory liability under § 1983 occurs only when "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Id. The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Alternatively, a causal connection may be established when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights. Id.

Staley's only allegation against Defendant Donald is that he failed to properly segregate prisoners in violation of O.C.G.A. § 42-5-52, which provides for the classification and separation of inmates with respect to "age, first offenders, habitual criminals and incorrigibles, diseased inmates, mentally diseased inmates,

12

and those having contagious, infectious, and incurable diseases." According to Staley, Donald's violation of the statute caused his exposure to Brown, which in turn, caused his injuries. Staley has failed to demonstrate that Donald adopted a policy in violation of O.C.G.A. § 42-5-52. There is no indication that housing Staley with an inmate such as Brown violates the statute. Moreover, there is no indication that the general housing policy in the prison resulted in deliberate indifference to constitutional rights, as is necessary to impute supervisory liability to Donald.

Staley alleges that Defendant Head exhibited deliberate indifference by failing to respond to the assaults and thefts at the prison and by placing Staley back in general population after he was assaulted. Based on the record, Staley's discussion with Defendant Head focused mainly on the problem of theft in the prison. Nothing in that discussion indicates that Staley was alerting Head to a substantial risk of serious violence either generally or specific to Staley or that Head understood the discussion as such. To the extent Staley argues supervisory liability based on a "history of widespread abuse" at the prison, he has failed to establish such a pattern existed. On that point, Staley presents his own statement and that of two other inmates. At most, those statements establish that several isolated assaults or thefts may have occurred over an eight year period at the

13

prison. That is not sufficient evidence to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to. Turning to Staley's allegation that Head was deliberately indifferent in placing him back in the general population after his assault and thus exposing him to theft and threats, Staley has produced no evidence indicating that, in the wake of his assault, he was exposed to a substantial risk of serious harm or that Head was aware of any substantial risk to him and ignored it. Moreover, it is unclear exactly what injury Staley complains of in relation to being placed back in the general population. Finally, Staley concedes that the day after he returned to the general population he stated a fear of harm, at which point he was put into protective custody.

Staley alleges that Defendant King exhibited deliberate indifference through her inadequate supervision or control of the floor officer at the time of the assault and her failure to respond to the assault. First, it is clear that King, in the control room, had no control over the floor officer's actions. Therefore, to the extent that Staley looks to premise liability of King's failure to control the floor officer, that theory must fail. Furthermore, Staley has produced no evidence indicating that King delayed in responding to the assault. More generally, Staley has produced no evidence indicating that King acted with deliberate indifference to a substantial risk of harm to Staley. Taken in the light most favorable to Staley, the facts

14

indicate that King may have been aware of a risk to Staley from another inmate, Haywood, and that King did nothing to aid Staley between the time Brown initially spat on Staley and the eventual assault. Although an inmate does not necessarily have to identify the particular source of risk, in this case, there is no evidence that Staley's fear of reprisal at the hands of Haywood based on a specific incident between them alerted King to a substantial risk of harm to Staley from Brown, or any other inmate. In retrospect, any failure on King's part to intuit that Brown spitting on Staley was a precursor to physical violence is at most negligent. That being the case, any failure on her part to call for assistance immediately upon the initial spitting incident cannot constitute deliberate indifference.

Contrary to Staley's contention, there is no indication that the district court failed to review the record or draw reasonable inferences in Staley's favor.

Because Staley failed to present triable facts showing that defendants were deliberately indifferent to a substantial risk of harm to him, the district court did not err by granting summary judgment to the defendants.

Based upon a review of the record and the parties' briefs, we find no error. Accordingly, we affirm.

**AFFIRMED.**

15