# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2095

———————

| | | |
|---|---|---|
| Ricky E. Moore, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| City of Desloge, Missouri, | * | |
| | * | |
| Defendant/Appellee, | * | |
| | * | |
| Theresa A. Moore; Jason E. Moore, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Aaron Malady; James Bullock; | * | |
| John Doe 1; John Doe 2, | * | |
| | * | |
| Defendants/Appellees. | * | |

———————

Submitted: March 17, 2011
Filed: July 28, 2011

———————

Before RILEY, Chief Judge, LOKEN and COLLOTON, Circuit Judges.

———————

RILEY, Chief Judge.

After concluding police violated Ricky E. Moore's constitutional rights in seizing items from Moore's residence, a Missouri state trial court suppressed the

evidence.  Missouri filed an interlocutory appeal of the suppression order in the Missouri Court of Appeals, which was dismissed.  Moore then brought this civil rights lawsuit against his ex-wife Theresa Moore (Theresa) and son Jason Moore (Jason), the City of Desloge, Missouri (city), city police officer Aaron Malady (Officer Malady), city police chief James Bullock (Chief Bullock), and unidentified defendants.  The complaint alleged a 42 U.S.C. § 1983 claim against all defendants for violations of Moore's civil rights, as well as § 1985 and state law claims for civil conspiracy against all defendants.  The district court[1] granted Theresa's and Jason's motion to dismiss and granted summary judgment in favor of the remaining defendants.  Moore appeals the dismissal of the city, Officer Malady, and Chief Bullock (collectively, the police), alleging various errors.  We affirm.

## I.    BACKGROUND[2]

Moore and Theresa were married in 1972.  In 1988, Moore's right hand was crushed at work in a filtration rolling mill, requiring the amputation of three fingers. Moore suffers from several "serious and permanent medical conditions and disabilities" requiring regular treatment.  Moore requires daily doses of insulin to manage his diabetes and continuously takes oxygen to treat his chronic obstructive pulmonary disease (COPD).  He also suffers from ruptured disks in his spine with bone spurs.  In 2004, Moore "was dependent upon numerous prescription drugs to treat his medical condition and to relieve pain, including, but not limited to, the drug oxycontin."  According to his complaint, Moore has been "totally disabled and unable to work or support himself" since September 30, 1988.

---

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

[2]We view the record de novo in the light most favorable to Moore, drawing all reasonable inferences in his favor.  See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).

Moore reports that as late as 1994, he

> was financially secure then owning and possessing the following assets (among others)[:] (a) Worker's Compensation settlement related to [the rolling mill accident] in the gross sum of $650,000.00, (b) real estate and home at Bonne Terre, Missouri (free of mortgage debt), (c) several automobiles, (d) cash of at least $100,000.00, (e) valuable gun collection, (f) valuable knife collection, (g) valuable gold coin collection, (h) real estate and home [in] Bismarck, Missouri (free of mortgage debt) and (i) other valuable assets.

Moore claims Theresa set out his daily medicines and insulin until about 1994-95, and then she resolved "to either (a) kill [Moore] to acquire his assets or (b) to divorce [Moore] and take substantially all of [his] assets in the divorce process via unlawful means."

Moore alleges Theresa and Jason, having failed to kill Moore by setting out lethal dosages of medication and insulin, tried to steal his assets by creating a situation where Moore was unavailable to defend against Theresa's divorce action. The alleged conspiracy consisted of Theresa and Jason knowingly giving false information to police in an effort "to wrongfully implicate [Moore] in various crimes." Pursuant to this conspiracy, Moore believed Theresa and Jason convinced a Washington County, Missouri, prosecutor to file a criminal complaint against Moore. On December 12, 2003, the prosecutor charged Moore "with making and possessing an illegal pipe bomb," and, as a result, Moore was "arrested, taken into custody and incarcerated for a substantial period of time."

Moore alleges that on October 9, 2004, Jason met with Officer Malady and, knowing Moore was legally in possession of oxycontin, told Officer Malady that Moore was illegally possessing and selling the drug. Jason also told Officer Malady that a warrant for Moore's arrest was outstanding. Officer Malady communicated with

-3-

radio dispatch and was told the warrant was for unlawful use of a weapon.[3] Radio dispatch also informed Officer Malady that "Moore had a warning indicator out on him for possession and use of dangerous weapons." Officer Malady drove to an apartment where Jason said Moore could be found.

The parties dispute what happened next. According to Moore, Officer Malady knocked on Moore's apartment door, and when Moore opened it a crack, Officer Malady,

> with great force and extreme violence, illegally hurled the Premises front door fully open knocking [Moore] first against a heater inside Premises and then to the floor; Officer Malady . . . thereupon immediately pulled and stuck a fully loaded hand gun in [Moore's] face (while laying on the floor) shouting at [Moore] "Don't move you mother fucker or I'll kill you."

Officer Malady partially disputes Moore's characterization of the arrest, swearing, "I did not, merely by entering the . . . residence (or merely by opening or pushing on the door there, if indeed I did so at all), intend to effect the arrest of any person . . . . If the opening of the door struck, or had any physical effect on, Mr. Moore . . . then that was a wholly accidental and unintended effect . . . ."

While in Moore's residence, Officer Malady saw firearms "in plain sight," and he notified dispatch. After the firearms call, at least one other officer arrived as back-up. In addition to several firearms, Officer Malady noticed a bottle containing what was later determined to be 608 20mg oxycontin pills next to an open envelope "containing many Twenty Dollar bills," totaling approximately $580.00. Police seized

---

[3]The warrant, which alleges on August 27, 2003, Moore "attempted to kill or cause serious physical injury to Theresa Moore, by shooting at her," was for unlawful use of a weapon and first degree domestic assault.

the firearms, oxycontin, cash, and according to Moore, ammunition, a VHS video tape, flares and flare guns, and "numerous other items of personal property."

Moore "was arrested, incarcerated, and ultimately charged [in the Missouri trial court] with possession of a controlled substance" with the intent to distribute. On March 8, 2005, while Moore was incarcerated, Theresa filed for divorce, and a marriage dissolution decree was entered on July 1, 2005. On September 26, 2007, the Missouri trial court granted Moore's motion to suppress the oxycontin evidence. The state appealed the Missouri trial court's suppression order. On January 4, 2008, the Missouri Court of Appeals dismissed the state's appeal. The state criminal case was eventually dismissed.

On August 18, 2008, Moore commenced this 42 U.S.C. §§ 1983 and 1985 action in the district court. Moore alleged violations of various rights arising under the Fourth, Fifth, and Fourteenth Amendments and state civil conspiracy law. On each of his three claims, Moore prayed for actual damages in excess of $5 million, $10 million in punitive damages per individual defendant, plus attorney fees and costs.

The district court (1) dismissed the § 1983 claims against Theresa and Jason because they are not state actors, (2) dismissed the § 1985 conspiracy claims in their entirety because the complaint failed to allege discriminatory animus by Theresa and Jason as required by § 1985, and (3) declined to exercise supplemental jurisdiction over the state law conspiracy claims. On cross-motions for summary judgment, the district court denied Moore's motion because it concluded Moore could not use the Missouri trial court's suppression order to establish Officer Malady violated his rights via offensive non-mutual collateral estoppel. The district court then granted Officer Malady, Chief Bullock, and the city's summary judgment motions because without collateral estoppel there was insufficient evidence to support Moore's claims against them. The district court later entered an order dismissing the unidentified defendants.

Moore appeals only the district court's grant of summary judgment to Officer Malady, Chief Bullock, and the city. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.    DISCUSSION

Moore brought his claims against the police pursuant to 42 U.S.C. § 1983, which authorizes a private right of action against those who, under color of law, deprive a citizen of "any rights, privileges, or immunities secured by the Constitution and laws." The district court granted summary judgment to the police because it found Officer Malady was protected by the doctrine of qualified immunity. We review both grants of summary judgment and questions of qualified immunity de novo. See Hall v. Mo. Hwy. & Transp. Comm'n, 235 F.3d 1065, 1067 (8th Cir. 2000).

The qualified immunity doctrine provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007) (quoting Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004) (internal quotation marks omitted)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

In analyzing a claim of qualified immunity, we may examine the two key prongs—whether a right was violated and whether the asserted right was clearly established—in either order. See Camreta v. Greene, 563 U.S. ___, ___, 131 S. Ct. 2020, 2031-32 (2011). We elect to treat the constitutional issue first. Whether qualified immunity applies in this case depends upon "whether the facts alleged, taken in the light most favorable to [Moore], show that [Officer Malady's] conduct violated a constitutional right. If so, then we determine whether the constitutional right was

clearly established at the time." Norris v. Engles, 494 F.3d 634, 637 (8th Cir. 2007) (quoting Flowers v. City of Minneapolis, 478 F.3d 869, 872 (8th Cir. 2007)) (internal quotation marks omitted).

Moore argues the district court erred in failing to conclude the Missouri trial court's suppression order and eventual dismissal of the state criminal case against him conclusively established that his constitutional rights were violated for the purposes of his § 1983 claim.[4]  Alternatively, Moore argues the district court mistakenly analyzed his Fourth Amendment claim under the warrant-arrest doctrine rather than the stop-and-frisk doctrine.

### A.    Collateral Estoppel

The district court held Moore could not rely upon the offensive nonmutual collateral estoppel doctrine to establish that Officer Malady violated Moore's Fourth and Fourteenth Amendment rights.  The district court relied upon this court's factually similar decision in Duncan v. Clements, which requires, among other things, that "the party against whom collateral estoppel is asserted [was] a party or in privity with a party to the prior adjudication" and must "have [had] a full and fair opportunity to

---

[4]The police maintain the only issue properly before this court is the collateral estoppel issue because Moore did not raise the others in his brief in opposition to summary judgment.  In support of this contention, the police cite our decisions in Fjelsta v. Zogg Dermatology, PLC, 488 F.3d 804, 809 (8th Cir. 2007) (rejecting a claim not raised in plaintiff's complaint, argued in a summary judgment brief or developed on appeal), and Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir. 2007) (holding district courts are "not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim").  Both Fjelsta and Holland are inapposite.  Unlike Fjelsta, this case does not involve a distinct undeveloped claim, and the issues Moore appeals were properly raised and ruled upon below.  Nor is this a case like Holland, because Moore has not failed to designate the record evidence supporting his arguments.

litigate the issue in the prior suit." Duncan, 744 F.2d 48, 51 (8th Cir. 1984) (applying Missouri law[5]). Because "[o]nly the State of Missouri, not [the officer], had an interest in the outcome of the criminal proceeding against Duncan; [the officer's] personal interests were not at stake." Id. at 52. We therefore held the officer "did not have a full and fair opportunity to litigate" the issue in the prior proceeding. Id. at 52-53.

Moore argues the district court used the wrong elements in its analysis and cites State v. Daniels, 789 S.W.2d 243, 244-45 (Mo. Ct. App. 1990) as the proper case to apply. In Daniels, the Missouri intermediate appellate court did not require privity and, instead of the "full and fair opportunity to litigate the issue," required that "the offensive use of collateral estoppel . . . would not be unfair to the" party being estopped. Id. Moore's reliance on Daniels is misplaced. In Green v. Fred Weber, Inc., 254 S.W.3d 874, 884 (Mo. 2008), the Supreme Court of Missouri stated it "follows the 'narrow use of offensive collateral estoppel' . . . [under which] no party can be bound by a judgment unless she was in privity with the parties to that judgment." Furthermore, even if Daniels somehow survives Green, the same concerns for fairness to the officer that this court articulated in Duncan apply to whether "the offensive use of collateral estoppel would not be unfair to the" defendants here. Moore's collateral estoppel argument lacks merit.

### B.     Warrant Arrest or Terry Stop

Moore claims his Fourth and Fourteenth Amendment rights were violated when the district court analyzed his initial contact with Officer Malady as involving an arrest warrant, rather than as a warrantless seizure under Terry v. Ohio, 392 U.S. 1, 21-22 (1968). Moore's argument relies upon the inadmissibility of Moore's arrest warrant.

---

[5]If Missouri law would bar relitigation of the issue in Missouri courts, the Full Faith and Credit statute, 28 U.S.C. § 1738, generally requires federal courts to give effect to the state court judgment. See Haring v. Prosise, 462 U.S. 306, 312-13 (1983).

Because the district court did not err in admitting the warrant, and because any error would have been harmless, Moore's argument fails.

Over Moore's objection, the district court received a document purporting to be a warrant for Moore's arrest. We accord the district court's evidentiary rulings substantial deference, and review for abuse of discretion. See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1013 (8th Cir. 2008). Moore made the following objections to the warrant's admissibility, (1) the warrant was not authenticated, (2) there was no foundation for a finding the warrant was issued upon probable cause, (3) there was no foundation the warrant was issued and outstanding on October 4, 2004, (4) the warrant was hearsay, and (5) the warrant was irrelevant because Officer Malady "never had, saw or knew the terms of the alleged arrest warrant prior to the October 9, 2004 seizure of Moore and the . . . police dispatcher did not offer any evidence of 'probable cause' in this proceeding."

The district court did not err in admitting the warrant. The warrant is self-authenticating under Fed. R. Evid. 902(1) and (4), both as a public document under seal and as a public document signed by an official (judge, clerk, and sheriff). The warrant states the issuing court found probable cause for arrest and is signed by a judge. As a public record, the warrant is clearly excepted from the hearsay rule. See Fed. R. Evid. 803(8). The warrant is relevant to show the police reasonably believed there was a warrant for Moore's arrest.

Moore faults Officer Malady because Moore contends a radio dispatch "was not sufficiently reliable to establish either 'probable cause to arrest' or 'a reasonable suspicion to detain' Moore because [the police] presented no evidence in the summary judgment proceeding from the . . . police dispatcher to establish that the information . . . was reliable." It is not necessary for the dispatcher or the officer with actual possession of the warrant to testify as to its reliability. "The relevant question . . . is the objective (albeit fact-specific) question whether a reasonable officer could have

-9-

believed [the officer's] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." Anderson v. Creighton, 483 U.S. 635, 641 (1987). This court has long held that "the knowledge of one officer is the knowledge of all and that in the operation of an investigative or police agency the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause. The arresting officer himself need not possess all of the available information." United States v. Stratton, 453 F.2d 36, 37 (8th Cir. 1972). Nor need the officer possess the warrant itself. See Fed. R. Crim. P. 4(c)(3) and advisory committee note ("It is obviously impossible for a warrant to be in the possession of every officer who . . . might find himself in a position to apprehend the fugitive."). The warrant was properly admitted.

Even if the district court had admitted the warrant in error, Moore suffered no prejudice. Assuming the warrant were inadmissible, Moore contends his arrest must be analyzed under Terry. Terry requires, among other things, that officers possess a reasonable suspicion that a person has been or will be engaged in criminal activity before a warrantless stop may occur. See Terry, 392 U.S. at 21-22. Moore insists there is a factual dispute regarding whether Officer Malady had reasonable suspicion to detain Moore. No such factual dispute exists. Regardless of whether the warrant was valid and admissible, nothing in the record would cause a reasonable officer in Malady's position to think the warrant was invalid. The dispatcher told Officer Malady there was a warrant for Moore's arrest. The "tipster," who Moore alleged in his complaint was Moore's son Jason, told Officer Malady there was a warrant for Moore's arrest and Moore was selling drugs at his apartment. Notwithstanding Moore's attacks on Jason's credibility, a reasonable officer would be justified in inferring that a son might be in possession of reliable information about his father, particularly after dispatch confirmed the existence of the arrest warrant.

## C.    Out-of-Time Brief

Moore argues the district court abused its discretion in granting the police's motion to file their brief in opposition to Moore's motion for summary judgment out of time and denying Moore's motion to strike the brief. As Moore admits, rulings on motions to strike are committed to the district court's sound discretion. See, e.g., Brannon v. Luco Mop Co., 521 F.3d 843, 847 (8th Cir. 2008).

Moore is unable to show any material prejudice resulting from the late filing. Moore contends he was prejudiced because, if the court had not allowed the submission, his summary judgment motion would have been granted and he would have won the lawsuit. First, such a win under the circumstances is speculative. Second, we detect no error in the district court's good cause finding and conclude Moore's loss of any technical litigation advantage he might have enjoyed had the brief been stricken was outweighed by the severe penalty the police would have suffered. See Chorosevic v. Metlife Choices, 600 F.3d 934, 947 (8th Cir. 2010) (affirming challenge of district court's grant of leave to file answer). See also Staley v. Owens, 367 F. App'x 102, 105-06 (11th Cir. 2010) (unpublished per curiam) (finding no prejudice in the district court allowing a late filing of the eventually dispositive summary judgment motion). Finally, Moore also contends he was prejudiced by not being allowed to respond to the late-filed arguments in opposition to his motion for summary judgment. We reject this argument because Moore never requested leave to respond to the brief.

## D.    Failure to Train and Supervise Claims

Moore's claims against Chief Bullock and the city are based upon alleged failures to train and supervise Officer Malady, as well as policies or customs which gave rise to Moore's injuries. "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005). Similarly, to maintain an action for training or supervisory liability,

a plaintiff must show the failure to train or supervise caused the injury. See, e.g., Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996). Because Moore failed to establish Officer Malady violated Moore's constitutional rights, Moore cannot maintain this action against either Chief Bullock or the city.

## III.   CONCLUSION

We affirm the district court's judgment.

_____